**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OAKLAND POLICE AND FIRE )
RETIREMENT SYSTEM, individually and )
on behalf of all others similarly situated, )
                                   )
          Plaintiff, )
                                   )   Case No. 15-6742 (consolidated with
    v.                            )   Case No. 15-6745)
                                   )
MAYER BROWN LLP, )  Honorable Robert W. Gettleman
                                 )
          Defendant. )
_____)
                                 )
THE EMPLOYEES' RETIREMENT SYSTEM )
OF THE CITY OF MONTGOMERY, on )
behalf of itself and all others similarly situated, )
                                 )
          Plaintiff, )
                                 )
    v. )
                                 )
MAYER BROWN LLP, )
                                 )
          Defendant. )

**DEFENDANT'S MEMORANDUM IN**
**SUPPORT OF ITS MOTION TO DISMISS**

Stephen Novack
Timothy J. Miller
Andrew P. Shelby
Amanda M.H. Wolfman
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Doc. No. 751621

*Attorneys for Defendant*
*Mayer Brown LLP*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

SUMMARY OF ARGUMENT ....................................................................................... 1

ALLEGED FACTS ........................................................................................................... 2

MOTION TO DISMISS STANDARD ........................................................................... 3

ARGUMENT ..................................................................................................................... 4

    I.     NO DUTY ...................................................................................................... 5

        A.    Mayer Brown Cannot Be Liable
               Unless It Owed A Duty To JPMorgan ......................................................... 6

        B.    Whether Mayer Brown Owed A Duty To
               JPMorgan Is A Question Of Law For The Court To Decide ..................... 6

        C.    Mayer Brown Owed No Duty To JPMorgan ............................................... 6

               1.    Usually, Attornyes Owe Duties Only To Their Clients ................. 6

               2.    Attorneys Owe Duties To Non-Clients Only
                      In Very Narrow And Limited Circumstances ................................ 6

               3.    The Narrow *Pelham* Exception Is Not Met Here ........................... 9

                    a.    For Starters, Plaintiffs' Allegations
                          Focus On The Wrong Party's Intent ................................. 10

                    b.    In All Events, Mayer Brown Had No
                          Duty To JPMorgan As A Matter Of Law ......................... 11

    II.    NO RELIANCE ........................................................................................... 15

        A.    Reliance Is Required For Both
               Negligent Misrepresentation And Legal Malpractice ............................. 15

        B.    No Actual Reliance ..................................................................................... 16

        C.    No Reasonable Reliance .............................................................................. 18

               1.    No Reasonable Reliance On
                      Statements Made By Opposing Counsel ........................................ 18

                2.    No Reasonable Reliance Where
                      JPMorgan Could Have Discovered The Truth ............................... 20

i

III. NO CAUSATION ................................................................................................. 24

    A. No Causation Because No Reliance ........................................................ 25

    B. No Causation Because Of An Intervening Cause .................................... 25

        1. The Relevant Law Of Intervening Causation .............................. 25

        2. Here, The Complaints' Allegations Demonstrate
           An Intervening Cause For Plaintiffs' Alleged Damages .............. 27

CONCLUSION ........................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amerigas Propane, L.P. v. BP America, Inc.*
691 F. Supp. 2d 844 (N.D. Ill. 2010) ..................................................................... 16

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................................... 4, 17

*Associates In Adolescent Psychiatry, S.C. v. Home Life Insurance Co.*
941 F.2d 561 (7th Cir. 1991) ............................................................................ 24

*Avon Hardware Co. v. Ace Hardware Corp.*
998 N.E.2d 1281 (Ill. App. Ct. 2013) .................................................................. 15

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................... 3-4

*Blount Financial Services, Inc. v. Walter E. Heller & Co.*
819 F.2d 151 (6th Cir. 1987) ............................................................................ 24

*Blythe Holdings, Inc. v. DeAngelis*
750 F.3d 653 (7th Cir. 2014) ........................................................................ 25-27

*Central States Joint Board v. Continental Assurance Co.*
453 N.E.2d 932 (Ill. App. Ct. 1983) ................................................................. 21-22

*DeLuna v. Burciaga*
857 N.E.2d 229 (Ill. 2006) ............................................................................. 5, 8

*Employees' Retirement System of the City of Montgomery v. JPMorgan Chase Bank, N.A.*
No. 15-6007 (S.D.N.Y. July 30, 2015) .............................................................. 18, 28

*Felty v. Hartweg*
523 N.E.2d 555 (Ill. App. Ct. 1988) ................................................................... 9, 14

*First National Bank of Moline v. Califf, Harper, Fox & Dailey*
548 N.E.2d 1361 (Ill. App. Ct. 1989) ............................................................. 9, 11-13

*Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*
980 N.E.2d 215 (Ill. App. Ct. 2012) ..................................................................... 15

*Geaslen v. Berkson, Gorov & Levin, Ltd.*
613 N.E.2d 702 (Ill. 1993) .................................................................................. 8

*Gold v. Vasileff*
513 N.E.2d 446 (Ill. App. Ct. 1987) ............................................................... passim

i

*Harris v. Vitale*
8 N.E.3d 178 (Ill. App. Ct. 2014) ............................................................... 5, 6

*Ignarski v. Norbut*
648 N.E.2d 285 (Ill. App. Ct. 1995) ........................................................ 25, 27

*JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*
9 N.E.3d 104 (Ill. App. Ct. 2014) ................................................................ 15

*Jursich v. Arlington Heights Federal Savings & Loan Association*
441 N.E.2d 864 (Ill. App. Ct. 1982) ........................................................ 20, 24

*Kelly v. Carbone*
837 N.E.2d 438 (Ill. App. Ct. 2005) .............................................................. 6

*Kopka v. Kamensky & Rubenstein*
821 N.E.2d 719 (Ill. App. Ct. 2004) .............................................................. 8

*In re Estate of Lis*
847 N.E.2d 879 (Ill. App. Ct. 2006) .............................................................. 8

*Lyons v. SBCI Swiss Bank Corp. Investment Banking, Inc.*
No. 94 C 5448, 1995 WL 151810 (N.D. Ill. Mar. 31, 1995) ...................... 19

*Massey v. Merrill Lynch & Co.*
464 F.3d 642 (7th Cir. 2006) ........................................................................ 3

*McLane v. Russell*
546 N.E.2d 499 (Ill. 1989) ............................................................................ 8

*Medco Research, Inc. v. Fujisawa USA, Inc.*
Nos. 93 C 2705 & 93 C 2724, 1994 WL 719220 (N.D. Ill. Dec. 21, 1994) ............................... 23

*Merrilees v. Merrilees*
998 N.E.2d 147 (Ill. App. Ct. 2013) ........................................................ 18-19

*Mitchell v. Schain, Fursel & Burney, Ltd.*
773 N.E.2d 1192 (Ill. App. Ct. 2002) ...................................................... 25-27

*Neal v. Baker*
551 N.E.2d 704 (Ill. App. Ct. 1990) .............................................................. 9

*Neptuno v. Arbor*
629 N.E.2d 812 (Ill. App. Ct. 1998) ........................................................ 18, 20

*Oakland Police & Fire Retirement System v. JP Morgan Chase Bank, N.A.*
No. 15-6002 (S.D.N.Y. July 30, 2015) ................................................... 17-18, 28

*O'Connor v. Asperger Caraher LLC*
No. 05 C 5264, 2006 WL 3210498 (N.D. Ill. Nov. 6, 2006) ...................................... 20

*Ogle v. Fuiten*
466 N.E.2d 224 (Ill. 1984) ...................................................................................... 8

*Oliveira v. Amoco Oil Co.*
776 N.E.2d 151 (Ill. 2002) ..................................................................................... 16

*Orr v. Shepard*
524 N.E.2d 1105 (Ill. App. Ct. 1988) ..................................................................... 13

*Pelham v. Griesheimer*
440 N.E.2d 96 (1982)................................................................................... passim

*In re Estate of Powell*
12 N.E.3d 14 (Ill. 2014) .................................................................................... 6, 8

*Purmal v. Robert N. Wadington & Associates*
820 N.E.2d 86 (Ill. App. Ct. 2004) ................................................................. 25, 27

*Quinn v. McGraw-Hill Cos.*
168 F.3d 331 (7th Cir. 1999) .................................................................................. 15

*Randazzo v. Harris Bank Palatine, N.A.*
104 F. Supp. 2d 949 (N.D. Ill. 2000) ...................................................................... 20

*Rutkoski v. Hollis*
600 N.E.2d 1284 (Ill. App. Ct. 1992) ....................................................................... 9

*Schechter v. Blank*
627 N.E.2d 106 (Ill. App. Ct. 1993) ..................................................................... 7-9

*Schmidt v. Landfield*
169 N.E.2d 229 (1960)................................................................................ 20-21, 24

*Siegel Development, LLC v. Peak Construction LLC*
993 N.E.2d 1041 (Ill. App. Ct. 2013) ..................................................................... 21

*Teamsters Local 282 Pension Trust Fund v. Angelos*
839 F.2d 366 (7th Cir. 1988) ............................................................................ 22-24

*Virnich v. Vorwald*
664 F.3d 206 (7th Cir. 2011) .................................................................................. 18

*Warren Chevrolet, Inc. v. Bemis*
555 N.E.2d 101 (Ill. App. Ct. 1990) ....................................................................... 24

iii

*Webb v. Damisch*
842 N.E.2d 140  (Ill. App. Ct. 2005) ....................................................................... 25-27

*Zahorik v. Smith Barney, Harris Upham & Co.*
664 F. Supp. 309 (N.D. Ill. 1987) ................................................................... 24-25, 27

**Rules**

Federal Rule of Civil Procedure 11(b)(3) .............................................................. 10, 17

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1, 3

Defendant Mayer Brown LLP ("Mayer Brown"), by its attorneys, Novack and Macey LLP, submits this Memorandum in Support of its Motion to Dismiss.

## INTRODUCTION

Oakland Police and Fire Retirement System ("Oakland") filed a putative class action (i.e., Case No. 15-6742) against Mayer Brown on July 31, 2015 (the "Oakland Case").  Later on the same day, the Employees' Retirement System of the City of Montgomery ("Montgomery") filed a substantively identical putative class action against Mayer Brown (i.e., Case No. 15-6745) (the "Montgomery Case").  On September 11, 2015, the Montgomery Case was reassigned to this Court.  (Montgomery Dkt. 6.)[1]  (Oakland and Montgomery will be collectively referred to herein as "Plaintiffs.")  By its motion, Mayer Brown seeks dismissal of both Cases pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## SUMMARY OF ARGUMENT

At their core, both Cases should be dismissed for a very simple reason:  lawyers are employed to represent and protect their clients, not their clients' adversaries.  In these Cases, however, Plaintiffs are lenders who are suing their borrower's lawyers.  Indeed, according to the Complaints, Plaintiffs acted through, and were represented by, an agent that itself retained lawyers to protect the lenders' side of the payoff transaction at issue.  (In fact, Plaintiffs have sued their agent and its lawyers in New York, alleging that they are responsible for the mistake and the alleged damages at issue herein.)

---

[1]     Cites to "Dkt. __" are to the docket in the Oakland Case.  Cites to "Montgomery Dkt. __" are to the docket in the Montgomery Case before it was reassigned.

[2]     During the September 9, 2015 hearing, the Court stated that it was consolidating the Oakland and Montgomery Cases.  There has been no written order consolidating them, and Mayer Brown requests that the Court issue a written consolidation order consistent with its oral ruling.

In short, Mayer Brown was not counsel to Plaintiffs or Plaintiffs' agent, and for this and other reasons: (a) it owed no <u>duty</u> to either; (b) its representations could not reasonably be <u>relied</u> on by Plaintiffs' agent; and (c) it did not <u>cause</u> Plaintiffs' alleged losses. Hence, the Cases should be dismissed.

## <u>ALLEGED FACTS</u>[3]

In or around 2001, General Motors Corporation ("GM") borrowed money in what is called a "Synthetic Lease" transaction; JPMorgan Chase Bank, N.A. ("JPMorgan") acted as administrative agent for the lenders. (Dkt. 1, ¶ 16; Montgomery Dkt. 1, ¶¶ 7-9.)[4] In 2008, GM sought to pay off the Synthetic Lease. (Dkt 1, ¶¶ 16-17; Montgomery Dkt. 1, ¶ 16.) GM retained Mayer Brown to serve as its counsel in the payoff transaction. (Dkt 1, ¶ 17; Montgomery Dkt. 1, ¶ 16.) On the other hand, JPMorgan retained the law firm of Simpson Thacher and Bartlett LLP ("Simpson Thacher") for the lending side of the payoff transaction. (Dkt 1, ¶ 24; Montgomery Dkt. 1, ¶ 19.)

In the course of the Synthetic Lease payoff, three allegedly erroneous documents were prepared. <u>First</u> was a "Closing Checklist" that listed several dozen documents and actions to be completed to unwind the Synthetic Lease, including security interests to be terminated. (Dkt. 1, ¶¶ 18-23, 25; Montgomery Dkt. 1, ¶ 18.) Unfortunately, a security interest given in connection with an unrelated "Term Loan" between GM and JPMorgan (acting as administrative agent for the Term Loan lenders) was mistakenly included on the Closing Checklist as a security interest to be terminated in connection with the payoff of the Synthetic Lease (the "Term Loan Security

---

[3]    The allegations of Plaintiffs' complaints that are discussed herein are assumed to be true solely for the purposes of this motion. Mayer Brown reserves the right to deny some or all of those allegations at any appropriate time.

[4]    Because the Complaints refer to the Synthetic Lease as a "borrowing," (<u>id.</u>), for ease of reference, we refer to the parties thereto as borrower and lender.

Interest"). (Dkt. 1, ¶¶ 11-15, 19-23, 78-79; Montgomery Dkt. 1, ¶¶ 7-12, 18.) <u>Second</u> was a termination statement that was unrelated to the Synthetic Lease and, instead, pertained to the Term Loan Security Interest (the "Unrelated Termination Statement"). (Dkt. 1, ¶¶ 25-26; Montgomery Dkt. 1, ¶ 20.) <u>Third</u> was a document titled "Escrow Instructions" that included the Unrelated Termination Statement in a list of documents to be filed in connection with the Synthetic Lease payoff. (Dkt. 1, ¶¶ 31-32; Montgomery Dkt. 1, ¶ 25.) (Collectively, these three documents will be referred to herein as the "Three Documents.")

A Mayer Brown associate prepared drafts of the Three Documents and sent them to JPMorgan's attorney at Simpson Thacher. (Dkt. 1, ¶¶ 24-25, 31; Montgomery Dkt. 1, ¶¶ 16-18, 20-25.) JPMorgan's attorney reviewed the drafts, responding that the Mayer Brown associate did a "[n]ice job on the documents" and that the Escrow Instructions were "fine." (Dkt. 1, ¶¶ 27, 34; Montgomery Dkt. 1, ¶¶ 24-25.) Drafts of the Three Documents were, in turn, transmitted to JPMorgan, which also approved them. (Dkt. 1, ¶¶ 75, 79; Montgomery Dkt. 1, ¶¶ 26, 77, 88.) The Three Documents were then signed, and the Unrelated Termination Statement was filed. As a result, the Term Loan Security Interest was mistakenly terminated. (Dkt. 1, ¶¶ 37-38; Montgomery Dkt. 1, ¶¶ 27-29.)[5]

## <u>MOTION TO DISMISS STANDARD</u>

This Court is very familiar with the straightforward rules governing motions under Rule 12(b)(6). Most relevant here are two of them. <u>First</u>, a plaintiff who pleads facts that defeat its claims has "[pled] itself out of court." <u>Massey v. Merrill Lynch & Co.</u>, 464 F.3d 642, 650 (7th Cir. 2006). <u>Second</u>, to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state

---

[5] The Complaints describe in significant detail the litigation that resolved the question of whether the termination of the Term Loan Security Interest was effective. (Dkt. 1, ¶¶ 45-52; Montgomery Dkt. 1, ¶¶ 39-40, 49-56.) In that litigation, the Second Circuit concluded that the termination was effective. (Dkt. 1, ¶ 52; Montgomery Dkt. 1, ¶ 56.)

a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As will now be discussed, applying these standards here, Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

The Complaints do not allege that Mayer Brown intentionally included the Term Loan Security Interest in the drafts of the Three Documents or committed any intentional wrongdoing. Rather, the Complaints allege that the drafts of the Three Documents mistakenly included that security.

The Complaints also do not allege that Mayer Brown had anything to do with the Term Loan (other than preparing drafts of the three Synthetic Lease pay-off documents that mistakenly included the Unrelated Termination Statement). In particular, the Complaints do not allege that Mayer Brown represented GM (or anyone) with respect to the Term Loan. Indeed, the Complaints do not allege that Mayer Brown even knew that the Term Loan -- or Plaintiffs -- existed. Nor do the Complaints allege that Mayer Brown represented Plaintiffs or JPMorgan in connection with the Synthetic Lease. To the contrary, the Complaints allege -- entirely correctly -- that Mayer Brown represented GM and that Simpson Thacher represented JPMorgan.

Further, the Complaints do not allege that the Three Documents were transmitted to Plaintiffs or that Plaintiffs relied on them or any representations about them. Instead, the Complaints allege that Plaintiffs are two of approximately 400 entities that participated in making the Term Loan to GM and for whom JPMorgan acted as administrative agent. (Dkt. 1, ¶¶ 1-2; Montgomery Dkt. 1, ¶¶ 2, 9, 12.)

4

The Complaints are, thus, premised on the notion that Plaintiffs are entitled to bring this action for alleged misstatements made, and legal advice given, to their agent -- JPMorgan. Accordingly, for purposes of these Cases, Plaintiffs allege that they stand in JPMorgan's shoes. Indeed, the Complaints allege that Mayer Brown made negligent misrepresentations <u>to</u> <u>JPMorgan</u> (Count I) and committed legal malpractice <u>as</u> <u>to</u> <u>JPMorgan</u> (Count II).  Given that this is the way Plaintiffs have pled their claims for negligent misrepresentation (Count I) and legal malpractice (Count II), we address both counts in the context of JPMorgan as the recipient of the allegedly negligent legal advice and misrepresentations.

As explained in detail below, both counts should be dismissed for any <u>one</u> of three <u>independent</u> -- but related -- overarching reasons:

- Mayer Brown (counsel to GM) <u>had</u> <u>no</u> <u>duty</u> to JPMorgan (which had its own counsel);

- JPMorgan <u>did</u> <u>not</u> <u>actually</u> <u>rely</u> on Mayer Brown's statements and <u>could</u> <u>not</u> <u>reasonably</u> <u>rely</u> on Mayer Brown's statements about matters that were reviewed by JPMorgan's own counsel and equally and publicly available to it; and

- Simpson Thacher and JPMorgan had ample opportunity to discover and correct Mayer Brown's alleged errors.  Thus, as a matter of law, Mayer Brown's errors <u>did</u> <u>not</u> <u>cause</u> Plaintiffs' losses.

We address each of these grounds for dismissal below.

## I.    <u>NO DUTY</u>

Throughout this section, we cite the Illinois Supreme Court's seminal decision in <u>Pelham</u> <u>v. Griesheimer</u>, 440 N.E.2d 96 (1982).  We do so because it remains the key case on which the Illinois courts rely in analyzing whether Illinois attorneys owe duties to non-clients.  <u>E.g.</u>, <u>DeLuna v. Burciaga</u>, 857 N.E.2d 229, 247 (Ill. 2006); <u>Harris v. Vitale</u>, 8 N.E.3d 178, 182 (Ill. App. Ct. 2014).

A.     **Mayer Brown Cannot Be Liable Unless It Owed A Duty To JPMorgan**

Mayer Brown cannot be liable to Plaintiffs unless it owed <u>JPMorgan</u> a duty.  <u>Pelham</u>, 440 N.E.2d at 98 ("A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff.").  The duty requirement applies to both theories of liability alleged by Plaintiffs:  malpractice (Count II) and negligent misrepresentation (Count I).  <u>See id.</u> (malpractice); <u>Kelly v. Carbone</u>, 837 N.E.2d 438, 441 (Ill. App. Ct. 2005) (negligent misrepresentation, citing <u>Pelham</u>).

B.     **Whether Mayer Brown Owed A Duty To
       JPMorgan Is A Question Of Law For The Court To Decide**

"Whether a legal duty exists is a question of law to be determined by the Court."  <u>In re Estate of Powell</u>, 12 N.E.3d 14, 20 (Ill. 2014).  Stated another way, "[t]he determination of the duty -- whether the defendant and the plaintiffs stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiffs -- is an issue of law for the determination of the court."  <u>Pelham</u>, 440 N.E.2d at 98.

C.     **Mayer Brown Owed No Duty To JPMorgan**

1.     **Usually, Attorneys Owe Duties Only To Their Clients**

Attorneys owe duties of undivided loyalty to their clients.  As a result, historically, attorneys owed a duty of care <u>only</u> to clients and not to third parties.  <u>Pelham</u>, 440 N.E.2d at 99; <u>accord</u> <u>Harris</u>, 8 N.E.2d at 182.

2.     **Attorneys Owe Duties To Non-Clients Only
       In Very Narrow And Limited Circumstances**

In <u>Pelham</u>, the Illinois Supreme Court recognized that "[i]n the area of legal malpractice, the attorney's obligations to his client must remain paramount."  440 N.E.2d at 99.  And, although it acknowledged that lawyers could owe duties to non-clients, it held that such duties were owed only in very <u>limited</u> and <u>narrow</u> circumstances.  Indeed, the <u>Pelham</u> rule is that an

attorney can owe a duty to a non-client <u>only</u> if the <u>client's</u> intent to benefit or influence the non-client was the "primary or direct" purpose of the transaction or relationship:

> [T]o establish a duty owed by the defendant attorney to the nonclient the nonclient must <u>allege</u> and prove that the <u>intent</u> of <u>the client</u> to benefit the nonclient third party was the <u>primary</u> or <u>direct</u> purpose of the transaction or relationship.
>
> * * *
>
> We conclude that, for a nonclient to succeed in a negligence action against an attorney, he must prove that the <u>primary</u> purpose and intent <u>of</u> <u>the</u> <u>attorney-client</u> <u>relationship</u> <u>itself</u> was to benefit or influence the third party.

<u>Id.</u> at 99-100 (emphasis added). The Illinois Supreme Court also made clear that, because of the importance of the attorney's undivided duty of loyalty to the <u>client</u>, courts should be especially reluctant to impose a duty to a <u>non</u>-<u>client</u> in an <u>adversarial</u> setting:

> Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client.

<u>Id.</u> at 100; <u>see</u> <u>also</u> <u>Schechter v. Blank</u>, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) ("Since an attorney 'must represent his client with zeal and undivided loyalty in adversarial matters,' he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability.").

In <u>Pelham</u>, the court found that the defendant-attorney did not owe any duty to the non-clients. 440 N.E.2d at 100-01. The court concluded that the defendant was retained by the client-wife to obtain a divorce, a property settlement and custody of the client's children. <u>Id.</u> at 101. The court held that, despite the fact that the client's children were supposed to be beneficiaries of their father's insurance policy, they were not allowed to sue their mother's attorney for negligence in not ensuring that they were named as beneficiaries of that policy. <u>Id.</u>

According to the court, benefitting the children was not the <u>primary</u> reason why the wife hired the attorney. <u>Id.</u>

<u>Pelham</u> remains the case to which Illinois courts turn in analyzing claims against attorneys by third parties. And, since <u>Pelham</u> was decided, the Illinois Supreme Court has allowed suits by non-clients against attorneys in <u>only</u> <u>three</u> situations -- none of which is involved here:

- By the next of kin of decedents who are statutory beneficiaries of wrongful death actions. <u>Powell</u>, 12 N.E.3d 14; <u>DeLuna</u>, 857 N.E.2d 229;

- By intended beneficiaries of wills. <u>McLane v. Russell</u>, 546 N.E.2d 499 (Ill. 1989); <u>Ogle v. Fuiten</u>, 466 N.E.2d 224 (Ill. 1984); and

- By recipients of formal opinion letters authored by attorneys and addressed to other parties to a transaction at the direction of their clients. <u>Geaslen v. Berkson, Gorov & Levin, Ltd.</u>, 613 N.E.2d 702 (Ill. 1993).

Indeed, Illinois courts have repeatedly emphasized that <u>Pelham</u> created an <u>extremely</u> <u>narrow</u> <u>exception</u> to the rule that attorneys owe duties only to their clients. <u>Kopka v. Kamensky & Rubenstein</u>, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004) ("narrow exception"); <u>Schechter</u>, 627 N.E.2d at 109 (same).

Particularly relevant here, Illinois courts -- relying on <u>Pelham</u> -- have repeatedly <u>dismissed</u> <u>complaints</u> that sought to impose on attorneys duties to non-clients in <u>adversarial</u> situations. As the court in <u>Gold v. Vasileff</u>, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987), explained in affirming the dismissal of a complaint, "[a] lawyer must represent his client with zeal and undivided loyalty in adversarial matters, such as negotiations and drafting of documents concerning the sale of a business." <u>Accord</u> <u>In re Estate of Lis</u>, 847 N.E.2d 879, 889, 893 (Ill. App. Ct. 2006) (affirming dismissal; executor of will and beneficiary of will are adversaries);

8

Schechter, 627 N.E.2d at 109 (affirming dismissal; "Since an attorney 'must represent his client with zeal and undivided loyalty in adversarial matters,' he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability." (citation omitted)); Rutkoski v. Hollis, 600 N.E.2d 1284, 1289 (Ill. App. Ct. 1992) (affirming dismissal; executor and beneficiary of will are adversaries); Neal v. Baker, 551 N.E.2d 704, 706 (Ill. App. Ct. 1990) (same); First Nat'l Bank of Moline v. Califf, Harper, Fox & Dailey, 548 N.E.2d 1361, 1363-64 (Ill. App. Ct. 1989) (affirming dismissal; negotiations for loan are adversarial); Felty v. Hartweg, 523 N.E.2d 555, 557-58 (Ill. App. Ct. 1988) (affirming dismissal and refusing to find that attorney for closely-held corporation owed duty to minority shareholder because "[e]ven in closely held corporations, minority shareholders often have conflicting interests with the corporation").

### 3. The Narrow *Pelham* Exception Is Not Met Here

Plaintiffs here seek to latch on to Pelham's narrow exception. However, the allegations in their Complaints are far from sufficient to do so. The Oakland Complaint alleges:

> The entire purpose of Mayer Brown's compilation and transmittal of the erroneous Closing Checklist, the erroneous Escrow Instructions and the Erroneous Termination Statement was to influence the actions of JPMorgan and specially to obtain its assent to the release of the liens contained in the Closing Checklist. Mayer Brown knew or reasonably should have known that JPMorgan would rely on the Closing Checklist.

(Dkt. 1, ¶ 76; see also id. ¶ 86.) The Montgomery Complaint makes virtually identical allegations. (Montgomery Dkt. 1, ¶¶ 79, 90.) As will now be demonstrated, these allegations are insufficient to satisfy Pelham's narrow exception.

### a.    For Starters, Plaintiffs' Allegations <u>Focus On The Wrong Party's Intent</u>

To satisfy the <u>Pelham</u> exception and establish that Mayer Brown owed JPMorgan a duty, Plaintiffs must allege that the primary or direct purpose of GM's lawyer-client relationship with Mayer Brown was <u>GM's</u> -- not Mayer Brown's -- intent to benefit or influence JPMorgan. <u>Pelham</u>, 440 N.E.2d at 99-100. Yet, the Complaints do not allege <u>anything</u> about <u>GM's</u> intent -- let alone that <u>GM's</u> primary or direct purpose in hiring Mayer Brown was to benefit or influence <u>JPMorgan</u>. At most, the Complaints attempt to allege that <u>Mayer Brown</u> intended to influence JPMorgan. (<u>E.g.</u>, Dkt. 1, ¶ 76; Montgomery Dkt. 1, ¶ 79.) But, that is not enough because only <u>GM</u>'s intent matters. <u>Pelham</u>, 440 N.E.2d at 99. Without an allegation regarding <u>GM</u>'s intent to benefit or influence JPMorgan, Plaintiffs have not established that Mayer Brown owed JPMorgan any duty. <u>Pelham</u>, 440 N.E.2d at 99. Indeed, the Complaints fail for that reason alone.

Further, dismissal should be <u>with</u> prejudice. That is because, given the facts alleged in the Complaints, Plaintiffs could not possibly make the necessary allegation about <u>GM's</u> intent -- particularly in light of Federal Rule of Civil Procedure 11(b)(3). The Complaints allege that GM hired Mayer Brown to effect the payoff of the Synthetic Lease. (Dkt. 1, ¶ 17; Montgomery Dkt. 1, ¶ 16.) That transaction was sophisticated and complicated, involving multiple properties and substantial funds. (Dkt. 1, ¶¶ 16, 23; Montgomery Dkt. 1, ¶¶ 13-15, 18.) Thus, GM needed legal representation in that transaction for a host of reasons. Primary among them was surely the need to protect <u>GM's own</u> interests. For example, GM needed to make sure that none of the terms of the payoff was harmful to it, that the various documents executed in connection therewith were legally binding and effective, that all of the required paperwork to unwind the Synthetic Lease was completed, that GM's obligations as borrower thereunder were properly terminated and that

it obtained a release of all applicable security for the Synthetic Lease. These multiple purposes for which GM hired Mayer Brown to represent and protect <u>GM's</u> own interests would make implausible any allegation that GM hired Mayer Brown for the <u>primary</u> purpose of benefitting or influencing <u>JPMorgan</u>.

\*      \*      \*

The arguments in this subsection 3.a, and the foregoing well-settled legal principles on which they are based, are independently dispositive and require dismissal with prejudice -- without more. Each of the additional independent grounds described below leads to the same result.

### b. In All Events, Mayer Brown Had No Duty To JPMorgan As A Matter Of Law

In all events, given the numerous reasons just described as to why GM needed legal representation -- and especially because of the adversarial nature of the Synthetic Lease transaction -- Mayer Brown owed no duty to JPMorgan as a matter of law. GM (the borrower, represented by Mayer Brown) and JPMorgan (the lenders' agent, represented by Simpson Thacher) were in adversarial positions.

Cases applying <u>Pelham</u> consistently hold that attorneys do not owe duties to the "other side" in a transaction, especially when the other side is represented by counsel. Thus, in a case very similar to this one, the Illinois appellate court refused to find that a <u>borrower's</u> <u>attorney</u> owed a duty to the <u>client's</u> <u>lender</u>. <u>First Nat'l Bank</u>, 548 N.E.2d at 1363-64. In that case, potential borrowers retained a lawyer to help them obtain a loan. <u>Id.</u> at 1362. The plaintiff bank agreed to lend the money if the Small Business Administration ("SBA") guaranteed the loan. <u>Id.</u> The SBA agreed to guarantee the loan if it was secured by a second mortgage on the borrowers' home. <u>Id.</u> Accordingly, the plaintiff bank forwarded second mortgage documents to the

borrowers' lawyer.  Id.  However, even though the borrowers' house was held in a land trust, the borrowers' lawyer mistakenly had his clients sign the documents individually.  Id.  Subsequently, the borrowers gave a third mortgage on the property, and when the borrowers later filed for bankruptcy, the plaintiff-bank's second mortgage was declared invalid because the land trustee had not signed that mortgage.  Id.  The bank then sued the borrowers' lawyer for negligently preparing the second mortgage documents.  Id.

The trial court granted the motion to dismiss filed by the borrowers' lawyer, and the appellate court affirmed.  Id. at 1362, 1364.  Relying on Pelham, the appellate court rejected the notion that the borrowers' primary purpose in hiring their own lawyer was to benefit the bank. In language on all fours here, the appellate court stated:

> [The lender] contends that [the borrowers' lawyer's] representation of [the borrowers] was of a non-adversarial nature and that [the lawyer's] preparation of the mortgage securing the loan was intended to benefit both the [borrowers] and the [lender].  . . . We cannot agree.  [The lender] ignores the "primary purpose and intent" language of Pelham.  In the instant case the [borrowers], experienced business people, went out and hired an attorney for the sole purpose of assisting them in the procurement and execution of a loan necessary to keep their business afloat.  The primary and direct purpose of the relationship was for [the lawyer] to help the [borrowers] find a loan and for him to oversee the execution of the loan documents.  Obviously another party was going to benefit somewhat by making a loan to the [borrowers], i.e. by receiving interest from the loan, but it cannot be said that this was the primary and direct reason for the [lawyer-client] relationship.

Id. at 1363 (emphasis in original).  Notably, the court also found it significant that "[n]othing prevented the [lender] from having [the borrowers' lawyer] return the completed documents to the [lender] for [its] own counsel to review."  Id. at 1364.  This point mirrored Pelham, in which the court's analysis was influenced by the fact that somebody else besides the wife's lawyer could have protected the interests of the children.  In particular, the Pelham court stated that "the

rights of the minor children of the parties in this case could have been protected without compromising the undivided loyalty of either spouse's attorney." 440 N.E.2d at 101.

As in First National Bank, GM, an "experienced business . . . went out and hired an attorney for the sole purpose of assisting [it] in the . . . execution of a loan [payoff]." 548 N.E.2d at 1363. The "primary and direct purpose of the relationship was for [Mayer Brown] to help [GM] . . . and for [Mayer Brown] to oversee the execution of the loan [payoff] documents." Id. Indeed, the facts in the instant case are stronger for Mayer Brown than they were for the borrowers' lawyer in First National Bank. That is because the things that "could have" happened there actually happened here. In particular: (1) JPMorgan did hire its own counsel who, in fact, did review and approve the Three Documents for it; and (2) JPMorgan itself also approved the Three Documents. In short, First National Bank compels dismissal of the Complaints here.

Orr v. Shepard, 524 N.E.2d 1105 (Ill. App. Ct. 1988), also is strikingly similar to the instant case. In Orr, the sellers of commercial real estate sued the buyer's lawyer because his negligent preparation of an escrow agreement allegedly caused damage to the sellers. Id. at 1106-07. However, the trial court held that the buyers' lawyers' preparation of an escrow agreement did not create a duty to the sellers and dismissed the claim. Id. The appellate court affirmed, using language that is precisely applicable here:

> [The lawyer] was the law firm of [the buyers]. The primary purpose of [the lawyer's] work was to protect the interest of [the buyers].

Id. at 1108.

Gold v. Vasileff, 513 N.E.2d 446 (Ill. App. Ct. 1987), also is instructive. In Gold, the buyers of a grocery store sued the sellers' lawyer after the sellers failed to perform under the sales contract. Id. at 447. The sellers' lawyer allegedly "promised and represented" that the

13

sellers would comply with the sales contract, despite the fact that he knew or should have known that they would not.  Id.  The appellate court rejected the buyers' argument in short order:

> A lawyer must represent his client with zeal and undivided loyalty in adversarial matters, such as negotiations and drafting of documents concerning the sale of a business.  Defendant [i.e., the sellers' lawyer] owed no fiduciary duties to the buyers, and if the buyers reposed trust and confidence in defendant, it was unreasonably placed . . . .

Id. at 448 (affirming dismissal of the case).

The Complaints also allege that Mayer Brown knew or should have known that JPMorgan was relying on it.  (Dkt. 1, ¶¶ 76, 85; Montgomery Dkt. 1, ¶¶ 79, 90.)  But, that does not suffice to create a duty.  A third party's reliance on a lawyer -- even if known by the lawyer -- does not create a duty.  Indeed, in Felty v. Hartweg, 523 N.E.2d 555, 557 (Ill. App. Ct. 1988) (affirming dismissal of case), the Illinois appellate court directly rejected that contention:

> The allegation that [the lawyer] should have known he was expected [by the minority shareholder] to protect the minority shareholder is an allegation which places upon him a duty not imposed by law.  Even if, as alleged, he knew of those expectations, that would not necessarily have imposed a duty which he would owe to a client.

\*     \*     \*

Here, Mayer Brown was retained by and represented the borrower, GM.  Mayer Brown's duty was to protect the borrower, including by getting all security relating to the Synthetic Lease released and making sure GM's interests were fully protected.  On the other hand, the lenders' agent, JPMorgan, had different interests -- including ensuring that it was fully paid on the Synthetic Lease and that only security related thereto was released.  JPMorgan hired Simpson Thacher to preserve these and other interests.  Thus, Mayer Brown owed no duty to JPMorgan.  As a result, the Complaints should be dismissed.

## II.    NO RELIANCE

The Complaints fail for another reason:  lack of reliance.  Subsection A below shows that reliance is a <u>requirement</u> for <u>both</u> negligent misrepresentation and legal malpractice claims. Subsection B then demonstrates that the Complaints do not, and cannot, allege that JPMorgan <u>actually</u> relied on Mayer Brown.  Finally, Subsection C establishes that, as a matter of law, JPMorgan could not <u>reasonably</u> rely on Mayer Brown's alleged misrepresentations.

### A.    Reliance Is Required For Both Negligent Misrepresentation And Legal Malpractice

Plaintiffs' negligent misrepresentation claim (Count I) requires Plaintiffs to plead, <u>inter alia</u>, that JPMorgan relied on an alleged misrepresentation.  <u>E.g.</u>, <u>JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC</u>, 9 N.E.3d 104, 121 (Ill. App. Ct. 2014); <u>Avon Hardware Co. v. Ace Hardware Corp.</u>, 998 N.E.2d 1281, 1287-88 (Ill. App. Ct. 2013).[6]

Reliance also is a necessary element of Plaintiffs' legal malpractice claim (Count II). Although reliance is not generally listed as an <u>express</u> element of a legal malpractice claim, Illinois law makes it an <u>implicit</u> element.  That is because causation is an express element of legal malpractice, and negligent legal advice does not <u>cause</u> a plaintiff's injury if the plaintiff does not <u>rely</u> on that advice.  <u>Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.</u>, 980 N.E.2d 215, 235 (Ill. App. Ct. 2012) (no proximate cause where plaintiffs in legal malpractice action failed to prove they relied on negligent advice).  Thus, because reliance is necessary for causation and causation is necessary for legal malpractice, reliance is necessary for legal malpractice.

---

[6]    <u>East-West Logistics</u> considered a fraud claim.  However, under Illinois law, the reasonable reliance elements of fraud and negligent misrepresentation are the same.  <u>Avon Hardware Co.</u>, 998 N.E.2d at 1287-88; <u>Quinn v. McGraw-Hill Cos.</u>, 168 F.3d 331, 335-36 (7th Cir. 1999).

The Illinois Supreme Court has come to the same conclusion, albeit in the context of consumer fraud. In particular, although reliance is not an express element of consumer fraud, the Illinois Supreme Court holds that it is an implicit element thereof subsumed by the causation requirement. Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 161 (Ill. 2002) (affirming dismissal of Illinois Consumer Fraud Act claim where plaintiff did not plead reliance). As the Illinois Supreme Court explained:

> in the common law tort of fraudulent misrepresentation, the causal link between the wrongdoer and the damage to the plaintiff is provided by the concept of reliance. More precisely, in the common law tort of fraudulent misrepresentation, the element of cause-in-fact is defined as reliance.

Id. (emphasis in original); accord Amerigas Propane, L.P. v. BP Am., Inc., 691 F. Supp. 2d 844, 851-52 (N.D. Ill. 2010) (granting motion to dismiss Illinois Consumer Fraud Act claim because, without reliance on the alleged fraudulent misstatement, "there can be no proximate cause").

Thus, here, neither of Plaintiffs' claims can stand unless JPMorgan relied on Mayer Brown. As will now be shown in Sections B (no actual reliance) and C (no reasonable reliance), the Complaints have not done so.[7]

**B.**     **No Actual Reliance**

As an initial matter, the Complaints here fail because they allege no facts supporting their conclusory allegations that JPMorgan actually relied on Mayer Brown. The closest the Oakland Complaint comes to alleging reliance is that "JPMorgan, based on its reliance on Mayer Brown's representations, authorized the release of liens listed by Mayer Brown." (Dkt. 1, ¶ 79; see also id. ¶ 88.) The Montgomery Complaint makes only similar conclusory allegations. (Montgomery Dkt. 1, ¶¶ 83, 93.) These conclusory allegations of reliance by JPMorgan should be disregarded.

---

[7]     Although this argument is also an additional causation argument, we discuss it in detail in this Section II (no reliance) rather than Section III (no causation) for ease of analysis.

Ashcroft, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice.").

What is more, these allegations are made in the "Claims for Relief" sections of each Complaint. Yet, missing from the Complaints' "Facts" sections are any facts that support these "threadbare recitals" of the reliance element. For example, there is no allegation that, in reliance on Mayer Brown's initial drafting, JPMorgan declined to review the drafts of the Three Documents or declined the opportunity to retain independent counsel to review them or instructed its counsel to forego reviewing the drafts. To the contrary, the Complaints affirmatively allege that JP Morgan did retain independent counsel, who did undertake a review of the drafts, and that both JPMorgan and its counsel approved them. Thus, not only is there nothing but a naked and conclusory allegation of reliance (which is insufficient, even under notice pleading standards), but also other affirmative factual allegations defeat those conclusory assertions. See Ashcroft, 556 U.S. at 678.

Further, it is not plausible that Plaintiffs could supply the missing reliance allegations and still comply with Federal Rule of Civil Procedure 11(b)(3). It defies all logic to suggest that JPMorgan (a highly sophisticated lender and one of the largest companies in the world) represented by Simpson Thacher (a highly sophisticated law firm) relied on its adversary's counsel in deciding what security to release. Indeed, Plaintiffs alleged the exact opposite in putative class actions that each brought against JPMorgan and Simpson Thacher in the United States District Court for the Southern District of New York on July 30, 2015, as Case Nos. 15-6002 and 15-6007. There, Oakland alleged:

> Simpson Thacher knew that JPMorgan would rely on its review
> and approval of [the Three Documents].

> Simpson Thacher negligently represented to JPMorgan and Mayer Brown that the [Three Documents] were 'fine' when, in fact they were grossly inaccurate . . . .
>
> Simpson Thacher knew that JPMorgan would rely on <u>its</u> representations regarding the [Three Documents].

(Ex. 1 hereto, Compl. ¶¶ 146-48, <u>Oakland Police & Fire Ret. Sys. v. JP Morgan Chase Bank, N.A.</u>, No. 15-6007 (S.D.N.Y. July 30, 2015) (emphasis added).)  Montgomery made similar allegations.  (Ex. 2 hereto, Compl. ¶¶ 158, 161, 164, <u>Emps.' Ret. Sys. of the City of Montgomery v. JPMorgan Chase Bank, N.A.</u>, No. 15-6002 (S.D.N.Y. July 30, 2015).)  The Court may take judicial notice of those proceedings on a motion to dismiss.  <u>See</u> <u>Virnich v. Vorwald</u>, 664 F.3d 206, 209 (7th Cir. 2011), <u>as</u> <u>amended</u> (Jan. 3, 2012) (court may judicial notice of pleadings in other case).

### C. <u>No Reasonable Reliance</u>

Although the question of whether a plaintiff's reliance is reasonable is usually a question of fact, "where it is apparent from the undisputed facts . . . that only one conclusion can be drawn, the question becomes one for the court."  <u>Neptuno v. Arbor</u>, 629 N.E.2d 812, 819 (Ill. App. Ct. 1998) (affirming grant of motion to dismiss negligent misrepresentation claim where reliance was not justified as a matter of law).  Here, the Complaints do not even purport to plead that any reliance on Mayer Brown was reasonable.  And for good reason.  Based on what is alleged, JPMorgan could not, as a matter of law, have reasonably relied on Mayer Brown.  This is so for either <u>one</u> of two <u>independent</u> reasons.

### 1. <u>No Reasonable Reliance On Statements Made By Opposing Counsel</u>

JPMorgan could not reasonably rely on Mayer Brown's alleged misrepresentations.  As a matter of law (except in the limited circumstance of opinion letters directed to the other side of the transaction, <u>see</u> <u>supra</u>), it is unreasonable for a party with its own counsel in a transaction to

rely on representations made by the attorney for the other side of the transaction. <u>Merrilees v. Merrilees</u>, 998 N.E.2d 147, 158-59 (Ill. App. Ct. 2013); <u>see also</u> <u>Gold</u>, 513 N.E.2d at 448-49 (unreasonable to rely on counsel for other side of transaction); <u>Lyons v. SBCI Swiss Bank Corp. Inv. Banking, Inc.</u>, No. 94 C 5448, 1995 WL 151810, at *3-4 (N.D. Ill. Mar. 31, 1995) (no reasonable reliance on representations made by another party in negotiations).

<u>Merrilees</u> is dispositive. There, the plaintiff and her husband negotiated a settlement of their divorce case. <u>Id.</u> at 153-54. Later, the plaintiff sued <u>her husband's lawyer</u> for making fraudulent statements that induced her to enter into the settlement contract. <u>Id.</u> at 154. The trial court dismissed the claim against the husband's lawyer -- with prejudice -- and the appellate court affirmed. <u>Id.</u> at 154-55, 158-59, 164. The appellate court held that the plaintiff could not plead <u>reasonable</u> reliance on representations made by the opposing side's attorneys during negotiations because the plaintiff had her own lawyer and a financial expert to advise her regarding the transaction at issue. <u>Id.</u> at 158-59.[8]

Plaintiffs here are no different than the plaintiff in <u>Merrilees</u>. They purport to plead that JPMorgan relied on representations made by the opposing side's attorneys (Mayer Brown) during negotiations of the Synthetic Lease payoff. Yet, JPMorgan had its own attorneys (Simpson Thacher). As a matter of law, JPMorgan could not <u>reasonably</u> rely on representations made by Mayer Brown -- the other side's attorneys -- during negotiations. <u>Id.</u>

<u>Gold</u> also is on point. As discussed above, in <u>Gold</u>, after the sale of a business, the <u>buyers</u> brought a negligent misrepresentation claim against the <u>sellers' lawyer</u>. 513 N.E.2d at 447-48. The trial court granted the lawyer's motion to dismiss -- with prejudice -- and the appellate court affirmed. <u>Id.</u> The appellate court did not mention whether the buyer had its own

---

[8]     As noted in footnote 6, <u>supra</u>, under Illinois law, the reasonable reliance elements of fraud and negligent misrepresentation are the same.

counsel.  Nevertheless, it held that "if the <u>buyers</u> reposed trust and confidence [in the <u>sellers'</u> <u>attorney</u>], it was unreasonably placed."  <u>Id.</u> at 448 (emphasis added).

Similarly, here, Plaintiffs allege that Mayer Brown represented GM in the Synthetic Lease payoff transaction.  Mayer Brown could not have been acting in any purported joint interest of both JPMorgan and GM.  After all, it was in GM's interest to obtain the release of all security related to the Synthetic Lease, and it was in JPMorgan's to get paid on the Synthetic Lease and preserve any other security in place on loans that had not been paid.  Mayer Brown had an obligation to represent GM with "zeal and undivided loyalty" during the negotiations, and if JPMorgan "reposed trust and confidence in defendant, it was unreasonably placed."  <u>Id.</u>

### 2.       No Reasonable Reliance Where<br>JPMorgan Could Have Discovered The Truth

"As a matter of <u>law</u>, if an ample <u>opportunity</u> to discover the truth of the representations existed, then reliance on them was not justified."  <u>O'Connor v. Asperger Caraher LLC</u>, No. 05 C 5264, 2006 WL 3210498, at *6 (N.D. Ill. Nov. 6, 2006) (Illinois law) (emphasis added) (citation, internal quotation marks and brackets omitted); <u>accord</u> <u>Neptuno</u>, 692 N.E.2d at 818.  Moreover, a party with <u>access</u> to a written document "may not reasonably rely on representations of other contracting parties respecting the <u>effect</u> of" the document.  <u>Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n</u>, 441 N.E.2d 864, 868 (Ill. App. Ct. 1982) (emphasis added); <u>see</u> <u>also</u> <u>Randazzo v. Harris Bank Palatine, N.A.</u>, 104 F. Supp. 2d 949, 952 (N.D. Ill. 2000) (Illinois law).

As the Illinois Supreme Court put it when addressing alleged misrepresentations about title to real estate:

> The rule is well established that a party is not justified in relying on representations made when he has <u>ample</u> <u>opportunity</u> to ascertain the truth of the representations before he acts.  When he is afforded the <u>opportunity</u> of knowing the truth of the representations he is chargeable with knowledge; and if he does

> not avail himself of the means of knowledge open to him <u>he cannot</u>
> <u>be heard to say he was deceived by misrepresentations</u>.

<u>Schmidt v. Landfield</u>, 169 N.E.2d 229, 232 (Ill. 1960) (emphasis added).  More recently, the

Illinois appellate court put it this way:

> A person may not enter into a transaction with his eyes closed to
> available information and then charge that he has been deceived by
> another.

<u>Siegel Dev., LLC v. Peak Constr. LLC</u>, 993 N.E.2d 1041, 1060 (Ill. App. Ct. 2013) (citations,

internal quotation marks and brackets omitted).

<u>Central States Joint Board v. Continental Assurance Co.</u>, 453 N.E.2d 932 (Ill. App. Ct.

1983), is on point.  That case considered whether one party justifiably relied on representations

the other made during negotiations.  There, the parties negotiated and entered into an amended

insurance policy.  <u>Id.</u> at 933-34.  The plaintiff later sued to rescind the amendment, claiming

fraudulent inducement during negotiations due to the defendant's failure to disclose that it had

inserted a provision into the amendment.  <u>Id.</u> at 934.  Although the trial court found in favor of

the plaintiff, the appellate court reversed.  <u>Id.</u> at 933-35.  The appellate court held that the

plaintiff could not have reasonably relied on any representations (or lack thereof) from the

defendant about the contract at issue because the plaintiff's attorney, the plaintiff's insurance

consultant and another insurance company on plaintiff's behalf all reviewed the amendment

before plaintiff signed it.  <u>Id.</u> at 936-37.  The court reasoned that, because the plaintiff had ample

opportunity to discover the unwanted provision, it could not have reasonably relied on any

alleged misrepresentations with respect thereto.  <u>Id.</u> at 937.

The same is true here.  JPMorgan and its counsel, Simpson Thacher, had ample

opportunity to discover the Unrelated Termination Statement before it was filed.  As a result,

JPMorgan could not reasonably rely on any misrepresentations made by Mayer Brown with respect thereto.  Id.

Also instructive is Teamsters Local 282 Pension Trust Fund v. Angelos, 839 F.2d 366 (7th Cir. 1988), which concerned a lender's reliance on statements made by a borrower's lawyer during loan negotiations.  There, the lender made a loan to a borrower.  Id. at 367-68.  When the loan went unpaid, the lender sued the borrower and the law firm that represented the borrower in the loan transaction for fraud for failing to disclose the borrower's tenuous financial position at the time of the loan.  Id. at 368.  The Seventh Circuit affirmed summary judgment in favor of the borrower and its lawyers because the lender could not prove reasonable reliance.  Id. at 371-72. The Seventh Circuit concluded that, during negotiations, the lender had the opportunity to discover the truth about the borrower's financial condition from the financial statements the borrower provided.  Id.  Thus, the lender could not rely on representations from the borrower or its law firm that were contradicted by those financial statements.  Id.  In particular, the Seventh Circuit noted that Illinois' law of reasonable reliance imposes a "duty to make an independent investigation[, which duty] includes the negative obligation of not relying on the representations, predictions and hopes of a borrower."  Id. at 372 (citation and internal quotation marks omitted).

Here -- as a matter of law -- JPMorgan could not justifiably rely on the alleged misrepresentations because the Complaints allege that JPMorgan and its counsel, Simpson Thacher, had at least the following ample opportunities to discover the truth of the alleged misrepresentations:

First, JPMorgan and its counsel had sufficient opportunities to review the Synthetic Lease payoff documents and discover the alleged misstatements.  After all, drafts of the Three Documents were sent to a Simpson Thacher attorney.  (Dkt. 1, ¶¶ 24-25, 31; Montgomery Dkt. 1,

¶¶ 21, 23-25.)  Indeed, <u>several</u> drafts of some of those documents were sent to Simpson Thacher, plus a follow-up email.  (<u>See</u> Dkt. 1, ¶¶ 24 (October 15, 2008 email), 25 (another October 15, 2008 email), 31 (October 24, 2008 email), 33 (October 27, 2008 follow-up email); Montgomery Dkt. 1, ¶¶ 21, 23-25.)   The Simpson Thacher attorney reviewed the drafts of the Three Documents and responded that the Mayer Brown associate did a "[n]ice job on the documents" and the Escrow Instructions were "fine."  (Dkt. 1, ¶¶ 27, 34; Montgomery Dkt. 1, ¶¶ 24-25.)  The documents were in turn transmitted to JPMorgan, which approved them.  (<u>See</u> Dkt. 1, ¶¶ 75, 79; Montgomery Dkt. 1, ¶¶ 23, 26.)   The reviews by both Simpson Thacher and JPMorgan constituted ample opportunities to discover the truth of the representations, making reliance on them unjustified.  Indeed, according to the Complaints, the mistake was so obvious that it was apparent to any reviewer from the face of the drafts of the Three Documents.  (Dkt. 1, ¶ 26; Montgomery Dkt. 1, ¶ 20.)

     <u>Second</u>, the Complaints allege that JPMorgan was itself a party to both the Term Loan and the Synthetic Lease.  (Dkt. 1, ¶¶ 2, 16; Montgomery Dkt. ¶ 9.)  As such, the documents in its possession from those two transactions revealed the inaccuracy of the alleged misstatements. JPMorgan could not reasonably rely on the alleged misrepresentations where it possessed other information that contradicted them.  <u>Teamsters Local 282 Pension Trust Fund</u>, 839 F.2d at 371-72 (no reasonable reliance where plaintiff possessed documents contradicting the alleged misrepresentations); <u>Medco Research, Inc. v. Fujisawa USA, Inc.</u>, Nos. 93 C 2705 & 93 C 2724, 1994 WL 719220, at *10 (N.D. Ill. Dec. 21, 1994) (statements that were made during a negotiation were not actionable misrepresentations where the plaintiff "has access to outside information to verify the statements").

Third, because JPMorgan -- as a party to the Synthetic Lease payoff -- had access to the Three Documents, it could not rely on any statement by Mayer Brown about the effect thereof. See, e.g., Jursich, 441 N.E.2d at 868 (a party with access to a written document "may not reasonably rely on representations of other contracting parties respecting the effect of" the document (emphasis added)).

Finally, the financing statements for the Term Loan were publicly filed documents. Thus, JPMorgan and Simpson Thacher easily could have discovered any errors in the Three Documents. See Warren Chevrolet, Inc. v. Bemis, 555 N.E.2d 101, 103-04 (Ill. App. Ct. 1990) (plaintiff's acceptance of dealership's representations as to the worth of stock without examining or even requesting the dealership's records -- which were also on file with the Iowa Secretary of State's office -- prevented a finding of fraud on the part of the dealership); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152-53 (6th Cir. 1987) (misleading statements regarding bank's prime rate cannot be fraud where such information is publicly available) (cited favorably in Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins. Co., 941 F.2d 561, 570-71 (7th Cir. 1991)).

JPMorgan had a "duty to make an independent investigation [which] includes the negative obligation of not relying on the representations, predictions and hopes of a borrower [i.e., GM]." Teamsters Local 282 Pension Trust Fund, 839 F.2d at 372 (emphasis added). In the Illinois Supreme Court's words, if the party suing for a misrepresentation "does not avail himself of the means of knowledge open to him[,] he cannot be heard to say he was deceived by misrepresentations." Schmidt, 169 N.E.2d at 232.

## III.    NO CAUSATION

To sustain their negligent misrepresentation claim (Count I), Plaintiffs must also plead that Mayer Brown's alleged misrepresentations proximately caused their damages. Zahorik v.

24

<u>Smith Barney, Harris Upham & Co.</u>, 664 F. Supp. 309, 313 (N.D. Ill. 1987) (dismissing claim under Illinois law).  Similarly, to sustain their legal malpractice claim (Count II), Plaintiffs must plead <u>proximate</u> <u>cause</u> establishing that "but for" the attorney's negligence, the plaintiff would not have suffered damages.  <u>Ignarski v. Norbut</u>, 648 N.E.2d 285, 288 (Ill. App. Ct. 1995) (summary judgment based on failure to <u>plead</u> causation); <u>see</u> <u>also</u> <u>Webb v. Damisch</u>, 842 N.E.2d 140, 147-48 (Ill. App. Ct. 2005) (granting motion to dismiss malpractice claim due to failure to <u>plead</u> proximate cause); <u>Purmal v. Robert N. Wadington & Assocs.</u>, 820 N.E.2d 86, 93 (Ill. App. Ct. 2004) (same).

As will now be shown, the Complaints here fail because, as a matter of law, Mayer Brown did not <u>cause</u> Plaintiffs' losses.

### A.      No Causation Because No Reliance

As demonstrated in Section II.A, <u>supra</u>, reliance is necessary for causation.  Thus, because the Complaints fail with respect to reliance, they fail with respect to causation as well. (<u>See</u> Section II.A, <u>supra</u>.)

### B.      No Causation Because Of An Intervening Cause

The Complaints also fail for lack of causation because their allegations establish the presence of an intervening cause.  Subsection 1 below summarizes the relevant law of intervening causation.  Subsection 2 then shows that the application of that law to the allegations of the Complaints requires dismissal.

### 1.      The Relevant Law Of Intervening Causation

As a matter of law, a lawyer's negligence does not proximately cause harm where, at the time of the negligence, the lawyer's negligence could be corrected by replacement counsel or otherwise.  <u>See</u>, <u>e.g.</u>, <u>Blythe Holdings, Inc. v. DeAngelis</u>, 750 F.3d 653, 656-57 (7th Cir. 2014); <u>Mitchell v. Schain, Fursel & Burney, Ltd.</u>, 773 N.E.2d 1192, 1195 (Ill. App. Ct. 2002).  In other

words, a lawyer's negligence does not proximately cause damages where a subsequent lawyer -- or the client itself -- has the opportunity to correct the negligence. In such cases, the subsequent attorney's or client's failure to cure the error is an intervening cause that itself proximately causes the client's harm and absolves the original lawyer from liability. Two examples are illustrative:

In Mitchell, a lawyer negligently allowed his client's lawsuit to be dismissed for want of prosecution. 773 N.E.2d at 1193. At that time, the case could have been refiled pursuant to applicable refiling law. Id. at 1195. The client then hired a second lawyer, who negligently failed to reinstate the case before the time for refiling expired. Id. at 1193. When the client sued the first lawyer, the Illinois appellate court held that the first lawyer's negligence did not cause the client's damages. Id. at 1195. It held, instead, that the second lawyer's failure to reinstate the case proximately caused the client's damages. Id. at 1192, 1195; see also Webb, 842 N.E.2d at 147-48 (first lawyer not liable for failing to file claim subsequently filed by second lawyer).

In Blythe Holdings, the Seventh Circuit applied Mitchell in a transactional context. There, the client hired a lawyer to help it purchase property from the City of Chicago. 750 F.3d at 655. However, the purchase application that the lawyer filed contained errors, which caused the application to be denied as incomplete. Id. Nevertheless, the client could have cured the errors and completed the application, but it did not. Id. at 655-56. Instead, the client sued the lawyer for negligence. Id. at 656. The Seventh Circuit held that the lawyer did not proximately cause the client's failure to obtain the property. Id. at 657. It reasoned that "[s]ince [the client's] ability to acquire the vacant lots remained legally viable well after any alleged malpractice by [the lawyer], it was [the client's] failure to move forward with the application process, not malpractice on the part of [the lawyer], that doomed [the client's] real estate deal." Id.

26

### 2. Here, The Complaints' Allegations Demonstrate An Intervening Cause For Plaintiffs' Alleged Damages

When Mayer Brown prepared and transmitted drafts of the Three Documents to Simpson Thacher, the Unrelated Termination Statement had not yet been filed and the Term Loan Security Interest had not yet been released. Indeed, the Complaints' allegations show that the Term Loan Security Interest was not actually released until two weeks after Mayer Brown prepared and transmitted the initial drafts. (Dkt. 1, ¶¶ 24-27, 37; Montgomery Dkt. 1, ¶¶ 24, 27.) The Complaints' allegations also show that, during those two weeks, Simpson Thacher reviewed and approved the Three Documents, and JPMorgan approved them. As a result, the Complaints' allegations -- (a) that JPMorgan was Plaintiffs' agent and Simpson Thacher was JPMorgan's lawyer; and (b) that Mayer Brown's alleged negligence preceded Simpson Thacher and JPMorgan's review and approval of the drafts of the Three Documents -- which allegations must here be deemed as true -- mean that the mistake could and should have been corrected by either or both JPMorgan or Simpson Thacher.

Under Illinois law, Simpson Thacher and JPMorgan's ability to correct the Three Documents before the Term Loan Security Interest was actually released means that Mayer Brown did not proximately cause Plaintiffs' alleged loss. According to the Complaints' allegations, like the second attorney in Mitchell and the client in Blythe Holdings, Simpson Thacher and JPMorgan approved drafts of the Three Documents containing the alleged errors that terminated the Term Loan Security Interest at a time when correcting those errors would have prevented the damages. Thus, Mayer Brown did not proximately cause the loss of that security. Blythe Holdings, 750 F.3d at 757; Mitchell, 773 N.E.2d at 1195; see also Webb, 842 N.E.2d at 147-48; Purmal, 820 N.E.2d at 93; Zahorik, 664 F. Supp. at 313; Ignarski, 648 N.E.2d at 288.

Indeed, Plaintiffs themselves have alleged that JPMorgan and Simpson Thacher caused their alleged losses. Significantly, Plaintiffs' complaints in New York allege that JPMorgan and Simpson Thacher caused Plaintiffs' losses. Oakland alleged:

> As a result of the filing of the erroneous termination statement, caused by JPMorgan's gross negligence and breach of contract and Simpson Thacher's gross negligence and negligent misrepresentation, the value of Plaintiffs' and the other term loan lenders' investment in the $1.5 billion term loan has been substantially lost.

(Ex. 1 hereto, Compl. ¶ 4, <u>Oakland Police & Fire Ret. Sys. v. JP Morgan Chase Bank, N.A.</u>, No. 15-6007 (S.D.N.Y. July 30, 2015).) Likewise, Montgomery alleged that its security interest was lost "due to JPMorgan's breach of contract and gross negligence and the negligence and gross negligence and negligent misrepresentation of Simpson Thacher." (Ex. 2 hereto, Compl. ¶ 1, <u>Emps.' Ret. Sys. of the City of Montgomery v. JPMorgan Chase Bank, N.A.</u>, No. 15-6002 (S.D.N.Y. July 30, 2015).)

## <u>CONCLUSION</u>

For the reasons stated, the Complaints should be dismissed with prejudice.

Respectfully submitted,

MAYER BROWN LLP,

By:＿＿＿/s/ Stephen Novack＿＿＿＿＿
        One of Its Attorneys

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney, upon oath, hereby certifies that he served a copy of the foregoing ***Defendant's Memorandum In Support Of Its Motion To Dismiss*** upon all counsel of record by causing a true and correct copy thereof to be delivered by electronically filing the document with the Clerk of Court using the ECF system on the 16th day of October, 2015.

    /s/ Stephen Novack