**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| OAKLAND POLICE AND FIRE RETIREMENT SYSTEM, THE CITY OF OAKLAND and THE EMPLOYEES' RETIREMENT SYSTEMS OF THE CITY OF MONTGOMERY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 15-6742 |
| v. | ) ) | |
| MAYER BROWN LLP, | ) ) | Honorable Robert W. Gettleman |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Stephen Novack
Timothy J. Miller
Andrew P. Shelby
Amanda M.H. Wolfman
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Doc# 799160

*Attorneys for Defendant Mayer Brown LLP*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ 1

FACTS ............................................................................................................................................ 3

RULE 12(b)(6) STANDARD ...................................................................................................... 6

ARGUMENT .................................................................................................................................. 6

    A.    No Duty .......................................................................................................................... 8

        1.    Mayer Brown Cannot Be Liable
                Unless It Owed A Duty To Plaintiffs ................................................................. 8

        2.    Whether Mayer Brown Owed A Duty
                To Plaintiffs Is A Question Of Law For The Court To Decide ................. 8

                a.    Duty Is A Question Of Law ........................................................ 8

                b.    Usually, Attorneys Owe Duties Only To Their Clients ................. 9

                c.    Attorneys Owe Duties To Non-Clients Only
                      In Very Narrow And Limited Circumstances ................................ 9

        3.    The Narrow *Pelham* Exception Is Not Met Here Because
                The Amended Complaint Does Not Allege -- And Cannot
                Possibly Allege -- That GM's Primary Purpose In Retaining
                Mayer Brown Was To Influence Plaintiffs
                Or JPMorgan As *Their* Agent ................................................... 11

        4.    In Any Event, The Amended Complaint Does Not
                Adequately Allege GM's Intent To Influence JPMorgan
                As Agent For The Synthetic Lease Lenders ................................ 15

    B.    No Reliance ................................................................................................................. 22

        1.    Reliance Is Required For Both Negligent
                Misrepresentation And Legal Malpractice ................................... 22

        2.    The Amended Complaint Does Not Allege That Either
                Plaintiffs Or JPMorgan As Administrative Agent For
                The Term Loan Lenders Actually Relied On Mayer Brown ................. 24

         3.    The Amended Complaint Does Not Adequately
                Allege That JPMorgan As Administrative Agent For
                The Synthetic Lease Lenders Actually Relied On Mayer Brown ............. 24

i

        4.      No Reasonable Reliance ........................................................ 25

               a.      JPMorgan Was Obligated To Protect Itself ................................... 26

               b.      No Reasonable Reliance On Statements
                     Made By Opposing Counsel ........................................................ 26

               c.      No Reasonable Reliance Where JPMorgan
                     Could Have Discovered The Truth ............................................... 28

  C.      No Causation ............................................................................................ 31

        1.      No Causation Because No Reliance .......................................... 32

        2.      No Proximate Cause Because Plaintiffs'
              Damages Were Not Foreseeable ................................................. 32

        3.      No Causation Because Of An Intervening Cause ...................... 33

               a.      The Relevant Law Of Intervening Causation .............................. 33

               b.      Here, The Amended Complaint's Allegations
                     Demonstrate An Intervening Cause For Plaintiffs'
                     Alleged Damages ........................................................................ 34

  D.      The Amended Complaint Should Be Dismissed As To The City ....................... 35

        1.      No Standing ................................................................................ 35

         2.      Even If The City Had Standing, Mayer Brown's Other
              Arguments For Dismissal Apply With Even More Force To It ................ 36

CONCLUSION ..................................................................................................... 36

## **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Amerigas Propane, L.P. v. BP Am., Inc.,*
691 F. Supp. 2d 844 (N.D. Ill. 2010) ................................................................... 23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................... 6, 24, 25

*Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,*
941 F.2d 561 (7th Cir. 1991) ................................................................... 31

*Avon Hardware Co. v. Ace Hardware Corp.,*
998 N.E.2d 1281 (Ill. App. Ct. 2013) ......................................................... 22

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................. 6

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.,*
819 F.2d 151 (6th Cir. 1987) ................................................................... 31

*Blythe Holdings, Inc. v. DeAngelis,*
750 F.3d 653 (7th Cir. 2014) ......................................................... 33, 34, 35

*Central States Joint Board v. Continental Assurance Co.,*
453 N.E.2d 932 (Ill. App. Ct. 1983) ....................................................... 28, 29

*City of Chi. v. Beretta U.S.A. Corp.,*
821 N.E.2d 1099 (Ill. 2004) ................................................................... 33

*DeLuna v. Burciaga,*
857 N.E.2d 229 (Ill. 2006) ................................................................... 8, 10

*Felty v. Hartweg,*
523 N.E.2d 555 (Ill. App. Ct. 1988) ........................................................... 21

*First Nat'l Bank of Moline v. Califf, Harper, Fox & Dailey,*
548 N.E.2d 1361 (Ill. App. Ct. 1989) ................................................... 11, 17, 18

*Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.,*
980 N.E.2d 215 (Ill. App. Ct. 2012) ........................................................... 23

*Geaslen v. Berkson, Gorov & Levin, Ltd.,*
613 N.E.2d 702 (Ill. 1993) ................................................................... 10

*Gold v. Vasileff,*
513 N.E.2d 446 (Ill. App. Ct. 1987) ................................................. 11, 19, 26, 27

*Harris v. Vitale*,
8 N.E.3d 178 (Ill. App. Ct. 2014) ........................................................................... 8, 9

*Huang v. Brenson*,
7 N.E.3d 729 (Ill. App. Ct. 2014) ........................................................................ 32, 33

*Ignarski v. Norbut*,
648 N.E.2d 285 (Ill. App. Ct. 1995) ..................................................................... 32, 35

*In re Complaint of Am. River Transp. Co.*,
712 F. Supp. 2d 735 (N.D. Ill. 2010) ................................................................... 21, 22

*In re Estate of Powell*,
12 N.E.3d 14 (Ill. 2014) ........................................................................................ 8, 10

*JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*,
9 N.E.3d 104 (Ill. App. Ct. 2014) ............................................................................... 22

*Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n*,
441 N.E.2d 864 (Ill. App. Ct. 1982) .................................................................... 28, 31

*Kelley v. Carbone*,
837 N.E.2d 438 (Ill. App. Ct. 2005) ........................................................................... 8

*Kopka v. Kamensky & Rubenstein*,
821 N.E.2d 719 (Ill. App. Ct. 2004) .................................................................... 10, 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 35

*Lyons v. SBCI Swiss Bank Corp. Inv. Banking, Inc.*,
No. 94 C 5448, 1995 WL 151810 (N.D. Ill. Mar. 31, 1995) ...................................... 26

*M.O.C.H.A. Society, Inc. v. City of Buffalo*,
689 F. 3d 263 (2d Cir. 2012) ...................................................................................... 21

*Massey v. Merrill Lynch & Co.*,
464 F.3d 642 (7th Cir. 2006) ........................................................................................ 6

*McLane v. Russell*,
546 N.E.2d 499 (Ill. 1989) ........................................................................................... 10

*Merrilees v. Merrilees*,
998 N.E.2d 147 (Ill. App. Ct. 2013) ..................................................................... 26, 27

*Metromedia Co. v. Fugazy*,
983 F.2d 350 (2d Cir. 1992) ........................................................................................ 21

*Mitchell v. Schain, Fursel & Burney, Ltd.*,
773 N.E.2d 1192 (Ill. App. Ct. 2002) ............................................................ 33, 34, 35

*Neptuno v. Arbor*,
629 N.E.2d 812 (Ill. App. Ct. 1998) .................................................................. 25, 28

*O'Connor v. Asperger Caraher LLC*,
No. 05 C 5264, 2006 WL 3210498 (N.D. Ill. Nov. 6, 2006) ..................................... 28

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v.*
*JPMorgan Chase Bank (In re Motors Liquidation Co.)*,
777 F.3d 100 (2d Cir. 2015) ......................................................................... 4, 5, 6, 30

*Official Comm. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*,
486 B.R. 596 (Bankr. S.D.N.Y. 2013) ...................................................................... 5

*Official Comm. v. JPMorgan Chase Bank, N.A.*,
103 A.3d 1010 (Del. 2014) ................................................................................. 5, 26

*Ogle v. Fuiten*,
466 N.E.2d 224 (Ill. 1984) .................................................................................... 10

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002) .................................................................................... 23

*Orr v. Shepard*,
524 N.E.2d 1105 (Ill. App. Ct. 1988) ...................................................................... 18

*Pelham v. Griesheimer*,
440 N.E.2d 96 (Ill. 1982) ................................................................................ passim

*Purmal v. Robert N. Wadington & Assocs.*,
820 N.E.2d 86 (Ill. App. Ct. 2004) .................................................................... 32, 35

*Quinn v. McGraw-Hill Cos.*,
168 F.3d 331 (7th Cir. 1999) .................................................................................. 22

*Randazzo v. Harris Bank Palatine, N.A.*,
104 F. Supp. 2d 949 (N.D. Ill. 2000) ....................................................................... 28

*Schechter v. Blank*,
627 N.E.2d 106 (Ill. App. Ct. 1993) .................................................................... 10, 11

*Schmidt v. Landfield*,
169 N.E.2d 229 (Ill. 1960) ................................................................................ 28, 31

*Siegel Dev., LLC v. Peak Constr. LLC*,
993 N.E.2d 1041 (Ill. App. Ct. 2013) ...................................................................... 28

*Teamsters Local 282 Pension Trust Fund v. Angelos*,
839 F.2d 366 (7th Cir. 1988) ........................................................................ 29, 30, 31

*Virnich v. Vorwald*,
664 F.3d 206 (7th Cir. 2011) ................................................................................ 15

*Warren Chevrolet, Inc. v. Bemis*,
555 N.E.2d 101 (Ill. App. Ct. 1990) ...................................................................... 31

*Webb v. Damisch*,
842 N.E.2d 140 (Ill. App. Ct. 2005) .................................................................. 32, 35

*Zahorik v. Smith Barney, Harris Upham & Co.*,
664 F. Supp. 309 (N.D. Ill. 1987) ...................................................................... 31, 35

## <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1) .......................................................... 2, 36

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 2, 3, 6

Defendant Mayer Brown LLP ("Mayer Brown"), by its attorneys, Novack and Macey LLP, submits this Memorandum in Support of its Motion to Dismiss.

## SUMMARY OF ARGUMENT

Oakland Police and Fire Retirement System ("Oakland") filed a putative class action (i.e., Case No. 15-6742) against Mayer Brown on July 31, 2015. Later on the same day, the Employees' Retirement System of the City of Montgomery ("Montgomery") filed a substantively identical putative class action against Mayer Brown (i.e., Case No. 15-6745). On September 11, 2015, the Montgomery case was reassigned to this Court. (Montgomery Dkt. 6.)

Mayer Brown moved to dismiss both cases pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Oakland and Montgomery dismissed their complaints and, along with the City of Oakland -- a new plaintiff, but not a putative class plaintiff -- filed an amended complaint, which they titled "Consolidated Class Action Complaint" (the "Amended Complaint" or "Am. Compl. ¶ __"). This Memorandum will refer to Montgomery and Oakland as "Plaintiffs" and the City of Oakland as the "City."

Like the original complaints, the Amended Complaint suffers from the same fatal and incurable facial defects. As shown in the Argument section below, Mayer Brown: (1) owed no duty to Plaintiffs or their agent (JPMorgan) so Plaintiffs lack the essential duty element of any legal malpractice claim; and (2) relatedly, and for similar reasons, Plaintiffs do not and cannot allege two other essential elements -- reliance and causation.

Indeed, as shown in **Argument Section A.3**, in their futile effort to fill one glaring gap in their original complaints, Plaintiffs have exposed and further confirmed that Mayer Brown owed no duty -- and could not possibly have owed any duty -- to Plaintiffs or their agent. In particular, although the Amended Complaint alleges that Mayer Brown committed malpractice in

performing legal services in connection with the payoff of a Synthetic Lease transaction, the Amended Complaint makes clear that: (1) General Motors ("GM") was Mayer Brown's <u>only</u> client in connection with the Synthetic Lease transaction and its payoff; and (2) Plaintiffs (who allegedly were <u>Term Loan</u> Lenders, not <u>Synthetic Lease Lenders</u>) and JPMorgan (as administrative agent for the <u>Term Loan</u> Lenders) were not even parties to the Synthetic Lease or its payoff. So, even if Mayer Brown -- the <u>borrower's</u> lawyer in the Synthetic Lease transaction -- somehow could have owed a duty to the <u>Synthetic Lease</u> Lenders and JPMorgan acting as <u>their</u> agent (and, as shown in Argument Section A.4 below, Mayer Brown did not owe any such duty), it surely owed no such duty to the <u>Term Loan</u> Lenders (including Plaintiffs) or JPMorgan as <u>their</u> agent. Indeed, the disconnect could not be greater between: (1) the Term Loan Lenders (including Plaintiffs) and their agent -- all of whom were strangers to the <u>Synthetic Lease</u>; and (2) Mayer Brown, which represented GM in the Synthetic Lease, but is not alleged to have represented GM in the Term Loan, or to have otherwise been involved in or even aware of the Term Loan.[1]

**Argument Section A.4** will show that, in all events, Mayer Brown owed no duty to JPMorgan as agent for the <u>Synthetic Lease</u> Lenders either.

**Argument Sections B and C** will show that -- for reasons similar to lack of duty -- Plaintiffs do not and cannot show <u>reliance</u> or <u>causation</u> either.

Finally, **Argument Section D** will show that: (1) the new plaintiff (the City) lacks standing herein and the Amended Complaint should be dismissed as to it pursuant to Federal Rule of Civil Procedure 12(b)(1); and (2) the Amended Complaint should be dismissed as to the

---

[1]     In fact, Mayer Brown did not represent GM in connection with -- nor was it involved in or aware of -- the Term Loan. However, for purposes of this Rule 12(b)(6) motion, we point out only that there are no contrary allegations in the Amended Complaint.

City pursuant to Rule 12(b)(6) for the same reasons it should be dismissed as to the other Plaintiffs, which reasons are even stronger as to the City.

## FACTS[2]

In or around 2001, GM borrowed money in what is called a "Synthetic Lease" transaction; JPMorgan acted as administrative agent for the lenders. (Am. Compl. ¶¶ 21, 25, 29.)[3]  Mayer Brown represented GM in connection with the negotiation, documentation and consummation of the Synthetic Lease. (Id. ¶ 28.)  In 2008, GM sought to pay off the Synthetic Lease. (Id. ¶ 32.)  GM asked Mayer Brown, as its counsel throughout the matter, to prepare the documents necessary for the payoff. (Id. ¶ 32.)  On the other hand, JPMorgan retained the law firm of Simpson Thacher and Bartlett LLP ("Simpson Thacher") for the lending side of the payoff transaction. (Id. ¶ 58.)

In the course of the Synthetic Lease payoff, three erroneous documents were prepared. First was a "Closing Checklist" that listed several dozen documents and actions to be completed to unwind the Synthetic Lease, including security interests to be terminated. (Id.  ¶ 49.) Unfortunately, a security interest given in connection with an entirely unrelated "Term Loan" between GM and JPMorgan -- acting as administrative agent for the Term Loan Lenders -- was mistakenly included on the Closing Checklist as a security interest to be terminated in connection with the payoff of the Synthetic Lease (the "Term Loan Security Interest"). (Id. ¶ 55.)  Second was a termination statement that was unrelated to the Synthetic Lease and, instead, pertained to the Term Loan Security Interest (the "Unrelated Termination Statement"). (Id. ¶¶ 56-58.)  Third

---

[2]     The allegations of the Amended Complaint that are discussed herein are assumed to be true solely for the purposes of this motion.

[3]     The Complaint alleges that the Synthetic Lease was, "from an economic perspective, essentially a loan." (Id. ¶ 22.)  Thus, for ease of reference, we refer to the parties thereto as borrower and lender.

was a document titled "Escrow Instructions" that included the Unrelated Termination Statement in a list of documents to be filed in connection with the Synthetic Lease payoff. (Id. ¶¶ 68-70.) (Collectively, these three documents will be referred to herein as the "Three Documents.")

In their original complaints, Plaintiffs described how the Three Documents were reviewed and approved by both JPMorgan and its counsel, Simpson Thacher. The Amended Complaint, however, removes many of those allegations. No matter. The Second Circuit's decision in GM's subsequent bankruptcy proceeding that security for the Term Loan had been released provides a complete factual description of JPMorgan and Simpson Thacher's review and approval of the Three Documents. Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank (In re Motors Liquidation Co.), 777 F.3d 100, 105 (2d Cir. 2015) (described in Am. Compl. at ¶ 104). The Second Circuit describes the course of events as follows:

> [T]o represent its interests in the [Synthetic Lease payoff] transaction, JPMorgan relied on Simpson Thacher, its counsel for matters related to the Synthetic Lease. . . .
>
>     . . . .
>
>     After Mayer Brown prepared the Closing Checklist and draft UCC-3 termination statements, copies were sent for review to a Managing Director at JPMorgan who supervised the Synthetic Lease payoff and who had signed the Term Loan documents on JPMorgan's behalf. Mayer Brown also sent copies of the Closing Checklist and draft UCC-3 termination statements to JPMorgan's counsel, Simpson Thacher, to ensure that the parties to the transaction agreed as to the documents required to complete the Synthetic Lease payoff transaction. Neither directly nor through its counsel did JPMorgan express any concerns about the draft UCC-3 termination statements or about the Closing Checklist. A Simpson Thacher attorney responded simply as follows: "Nice job on the documents. My only comment, unless I am missing something, is that all references to JPMorgan Chase Bank, as Administrative Agent for the Investors should not include the reference 'for the Investors.'"

> After preparing the closing documents and circulating them for review, Mayer Brown drafted an Escrow Agreement that instructed the parties' escrow agent how to proceed with the closing. . . . When Mayer Brown e-mailed a draft of the Escrow Agreement to JPMorgan's counsel for review, the same Simpson Thacher attorney responded that "it was fine" and signed the agreement.
>
> . . . .
>
> JPMorgan and Simpson Thacher's repeated manifestations to Mayer Brown show that JPMorgan and its counsel knew that, upon the closing of the Synthetic Lease transaction, Mayer Brown was going to file the termination statement that identified the Main Term Loan UCC-1 for termination and that JPMorgan reviewed and assented to the filing of that statement. Nothing more is needed.

777 F.3d at 104-05. (Emphasis added.)[4]

Subsequent to these events, there was litigation in the bankruptcy court over whether the Unrelated Termination Statement was effective to release security for the Term Loan. The bankruptcy court found that it was not effective to do so. See Official Comm. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.), 486 B.R. 596, 602 (Bankr. S.D.N.Y. 2013); (Am. Compl. ¶ 100). On appeal, the Second Circuit certified a legal question to the Delaware Supreme Court. 755 F.3d 78, 86 (2d Cir. 2014); (Am. Compl. ¶ 101). The Delaware Supreme Court noted that the question it was asked assumed that JPMorgan "reviewed and knowingly approved the termination statement for filing." Official Comm. v. JPMorgan Chase Bank, N.A., 103 A.3d 1010, 1013 (Del. 2014); (Am. Compl. ¶ 103). Following the Delaware Supreme Court's decision, the Second Circuit held, as noted above, that the Unrelated Termination Statement was effective to release security for the Term Loan. 777 F.3d at 105; (Am. Compl. ¶

---

[4] The Argument section below refers to this Second Circuit opinion in connection with some (but not all) of Mayer Brown's arguments. As explained more fully in footnote 6 below, Plaintiffs are collaterally estopped from denying the facts determined in that opinion.

104). The Second Circuit remanded to the bankruptcy court where adversary proceedings (the "Bankruptcy Adversary Proceedings") involving the Term Loan Lenders (including Plaintiffs) are ongoing. (Am. Compl. ¶¶ 106-08.) The time for seeking Supreme Court review of the Second Circuit's opinion has passed.

## RULE 12(b)(6) STANDARD

This Court is very familiar with the straightforward rules governing motions under Rule 12(b)(6). Most relevant here are two of them. <u>First</u>, a plaintiff who pleads facts that defeat its claims has "[pled] itself out of court." <u>Massey v. Merrill Lynch & Co.</u>, 464 F.3d 642, 650 (7th Cir. 2006). <u>Second</u>, to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## ARGUMENT

Before discussing why the Amended Complaint should be dismissed, it is important to recognize what the Amended Complaint does not allege. <u>First</u>, the Amended Complaint does not allege that Mayer Brown <u>intentionally</u> included the Term Loan Security Interest in the drafts of the Three Documents or committed any <u>intentional</u> wrongdoing. Nor does it allege that GM retained Mayer Brown to obtain the release of any <u>Term Loan</u> security. Rather, the Amended Complaint alleges that the drafts of the Three Documents <u>mistakenly</u> included that security.

<u>Second</u>, the Amended Complaint does not allege that Mayer Brown had anything to do with the Term Loan other than preparing drafts of the Three Documents that mistakenly included the Unrelated Termination Statement. In particular, the Amended Complaint does not allege that Mayer Brown represented GM (or anyone) with respect to the Term Loan. Indeed, the Amended

Complaint does not allege that Mayer Brown even knew that the Term Loan -- or Plaintiffs -- existed.

Third, the Amended Complaint does not allege that Mayer Brown represented Plaintiffs or JPMorgan in connection with the Synthetic Lease. To the contrary, the Amended Complaint alleges that Mayer Brown represented GM only and that Simpson Thacher represented JPMorgan.

Finally, the Amended Complaint does not allege that Mayer Brown, or anyone else, transmitted the Three Documents to Plaintiffs or that Plaintiffs relied on them or any representations contained in them.

As explained in detail below, and particularly in light of the absence of any of the foregoing allegations, both counts should be dismissed as a matter of law. This is so for any one of three independent -- but related -- overarching reasons:

- Mayer Brown (counsel to GM in connection with the Synthetic Lease) had no duty to Plaintiffs (i.e., Term Loan Lenders), to JPMorgan as administrative agent for the Term Loan Lenders, or to JPMorgan as administrative agent for the Synthetic Lease Lenders (see Section A below);

- Plaintiffs and JPMorgan (in any capacity) did not rely on Mayer Brown's statements, and JPMorgan as administrative agent for the Synthetic Lease Lenders could not have reasonably relied on Mayer Brown's statements about matters that were reviewed by JPMorgan and its own counsel and that were equally and publicly available to it (see Section B); and

- Simpson Thacher and JPMorgan had ample opportunity to discover and correct Mayer Brown's alleged errors, so Mayer Brown's errors did not cause Plaintiffs' losses (see Section C).

Finally, as shown in Section D, the City lacks standing to assert any claims herein.

A.      <u>No Duty</u>

Throughout this section, we cite the Illinois Supreme Court's seminal decision in <u>Pelham v. Griesheimer</u>, 440 N.E.2d 96 (Ill. 1982).  We do so because it remains the key case that Illinois courts cite and rely on in analyzing whether Illinois attorneys owe duties to non-clients.  <u>E.g.</u>, <u>DeLuna v. Burciaga</u>, 857 N.E.2d 229, 247 (Ill. 2006); <u>Harris v. Vitale</u>, 8 N.E.3d 178, 182 (Ill. App. Ct. 2014).

1.      <u>Mayer Brown Cannot Be Liable Unless It Owed A Duty To Plaintiffs</u>

Mayer Brown cannot be liable to Plaintiffs unless it owed them a duty.  <u>Pelham</u>, 440 N.E.2d at 98 ("A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff.").  The duty requirement applies to both theories of liability alleged by Plaintiffs:  malpractice (Count II); and negligent misrepresentation (Count I).  <u>See id.</u> (malpractice); <u>Kelley v. Carbone</u>, 837 N.E.2d 438, 441 (Ill. App. Ct. 2005) (negligent misrepresentation, citing <u>Pelham</u>).

2.      <u>Whether Mayer Brown Owed A Duty To Plaintiffs Is A Question Of Law For The Court To Decide</u>

a.      <u>Duty Is A Question Of Law</u>

"Whether a legal duty exists is a question of law to be determined by the Court."  <u>In re Estate of Powell</u>, 12 N.E.3d 14, 20 (Ill. 2014).  Stated another way, "[t]he determination of the duty -- whether the defendant and the plaintiffs stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiffs -- is an issue of law for the determination of the court."  <u>Pelham</u>, 440 N.E.2d at 98.

### b.  Usually, Attorneys Owe Duties Only To Their Clients

Attorneys owe duties of undivided loyalty to their clients.  As a result, historically, attorneys owed a duty of care <u>only</u> to clients and not to third parties.  <u>Id.</u> at 99; <u>accord</u> <u>Harris</u>, 8 N.E.2d at 182.

### c.  Attorneys Owe Duties To Non-Clients Only In Very Narrow And Limited Circumstances

In <u>Pelham</u>, the Illinois Supreme Court recognized that "[i]n the area of legal malpractice, the attorney's obligations to his client must remain paramount."  440 N.E.2d at 99.  And, although it acknowledged that lawyers could theoretically owe duties to non-clients, it held that such duties were owed only in <u>very</u> <u>limited</u> and <u>narrow</u> circumstances.  Indeed, the <u>Pelham</u> rule is that an attorney can owe a duty to a non-client <u>only</u> if the <u>client's</u> intent to benefit or influence the non-client was the "primary or direct" purpose of the transaction or relationship:

> [T]o establish a duty owed by the defendant attorney to the nonclient the nonclient must <u>allege</u> and prove that the <u>intent</u> <u>of</u> <u>the</u> <u>client</u> to benefit the nonclient third party was the <u>primary</u> or <u>direct</u> purpose of the transaction or relationship. . . .
>
> . . . .
>
> We conclude that, for a nonclient to succeed in a negligence action against an attorney, he must prove that the <u>primary</u> purpose and intent <u>of</u> <u>the</u> <u>attorney-client</u> <u>relationship</u> <u>itself</u> was to benefit or influence the third party.

<u>Id.</u> at 99-100 (emphasis added).  The Illinois Supreme Court also made clear that, because of the importance of the attorney's undivided duty of loyalty to the client, courts should be especially reluctant to impose a duty to a non-client in an adversarial setting:

> Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client.

9

Id. at 100; see also Schechter v. Blank, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) ("Since an attorney 'must represent his client with zeal and undivided loyalty in adversarial matters,' he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability.").

In Pelham, the court found that the defendant-attorney did not owe any duty to the non-clients. 440 N.E.2d at 100-01. The court concluded that the defendant was retained by the client-wife to obtain a divorce, a property settlement and custody of the client's children. Id. at 101. The court held that, despite the fact that the client's children were supposed to be beneficiaries of their father's insurance policy, they could not sue their mother's attorney for not ensuring that they were named as beneficiaries of that policy. Id. According to the court, benefitting the children was not the primary reason why the wife hired the attorney. Id.

Pelham remains the case to which Illinois courts turn in analyzing claims against attorneys by third parties. And, since Pelham was decided, the Illinois Supreme Court has allowed suits by non-clients against attorneys in only three situations -- none of which is involved here:

- By the next of kin of decedents who are statutory beneficiaries of wrongful death actions. Powell, 12 N.E.3d 14; DeLuna, 857 N.E.2d 229;

- By intended beneficiaries of wills. McLane v. Russell, 546 N.E.2d 499 (Ill. 1989); Ogle v. Fuiten, 466 N.E.2d 224 (Ill. 1984); and

- By recipients of formal opinion letters authored by attorneys and addressed to other parties to a transaction at the direction of their clients. Geaslen v. Berkson, Gorov & Levin, Ltd., 613 N.E.2d 702 (Ill. 1993).

Indeed, Illinois courts have repeatedly emphasized that Pelham created an extremely narrow exception to the rule that attorneys owe duties only to their clients. Kopka v. Kamensky &

Rubenstein, 821 N.E.2d 719, 723 (Ill. App. Ct. 2004) ("narrow exception"); Schechter, 627 N.E.2d at 109 (same).

Particularly relevant here, Illinois courts -- relying on Pelham -- have repeatedly dismissed complaints that sought to impose on attorneys duties to non-clients who are on the opposite sides of transactions. As the court in Gold v. Vasileff, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987), explained in affirming the dismissal of a complaint, "[a] lawyer must represent his client with zeal and undivided loyalty in adversarial matters, such as negotiations and drafting of documents concerning the sale of a business." Accord First Nat'l Bank of Moline v. Califf, Harper, Fox & Dailey, 548 N.E.2d 1361, 1363-64 (Ill. App. Ct. 1989) (affirming dismissal; involving negotiations for loan).

> ### 3. The Narrow *Pelham* Exception Is Not Met Here Because The Amended Complaint Does Not Allege -- And Cannot Possibly Allege -- That GM's Primary Purpose In Retaining Mayer Brown Was To Influence Plaintiffs Or JPMorgan As *Their* Agent

As already explained more fully in the Facts section above, the Amended Complaint arises out of GM's payoff of the Synthetic Lease. In that 2001 transaction, GM had borrowed monies from a group of Synthetic Lease Lenders, for whom JPMorgan acted as administrative agent. GM was represented by Mayer Brown in the transaction. In 2008, GM desired to pay off the balance of the Synthetic Lease, and Mayer Brown continued to represent GM as to the payoff. Simpson Thacher represented JPMorgan in connection with the Synthetic Lease payoff.

GM was also the borrower on the separate and distinct Term Loan, pursuant to which it borrowed monies from the Term Loan Lenders, for whom JPMorgan acted as administrative agent. The Term Loan was originally made in 2006 -- five years after the Synthetic Lease -- and it was still outstanding as of the Synthetic Lease payoff. There is no allegation that Mayer Brown represented GM in connection with the Term Loan or that Mayer Brown even knew that

there was a Term Loan, that there were any Term Loan Lenders, or that Plaintiffs had any interest in such a loan.

In light of all of this (and other alleged facts in the original complaints), one of the many dispositive points that Mayer Brown made in its memorandum in support of its motion to dismiss the original complaints (the "Original Memo," Dkt. No. 21) was that Mayer Brown did not owe a duty -- and could not possibly have owed a duty -- to Plaintiffs or their agent, JPMorgan. Among other things, citing Pelham and its progeny, the Original Memo showed that Illinois law limits a lawyer's duties to a non-client to only those situations in which the "primary purpose and intent of the attorney-client relationship itself was to benefit or influence the [non-client]." Pelham, 440 N.E.2d at 100. The Original Memo also demonstrated that the original complaints did not allege sufficient facts to meet the Pelham test, including that they did not -- and could not -- allege that GM's primary intent in retaining Mayer Brown for the Synthetic Lease payoff was to benefit anyone other than GM.

Indeed, the allegations of the original complaints precluded any duty by Mayer Brown to Plaintiffs or their agent, thus pleading Plaintiffs out of court. Among other things, the Original Memo relied on: (a) the original complaints' allegations that JPMorgan's lawyer reviewed Mayer Brown's drafts of the erroneous Three Documents prior to sending them to JPMorgan for its approval; and (b) the fact that, in other litigation filed by Plaintiffs and then pending in the Southern District of New York, Plaintiffs alleged that JPMorgan relied on Simpson Thacher's review of Mayer Brown's drafts and that JPMorgan and Simpson Thacher's negligence and breach of duty to Plaintiffs caused Plaintiffs' damages. (Dkt. No. 21 at 3, 13, 17, 18, 23 & 28.)

In an attempt to try to "cure" the many fatal defects in the original complaints, Plaintiffs did two things. For one, they voluntarily dismissed their cases in the Southern District of New

York, hoping that by this stroke of the pen they could erase the true <u>facts</u> about JPMorgan and Simpson Thacher's role in reviewing and approving the Three Documents.  For the other, they then filed the Amended Complaint in this case, primarily making two changes from the original complaints.

<u>First</u>, the Amended Complaint plays games.  Among other things, it removed from the original complaints significant -- and truthful -- allegations that supported Mayer Brown's initial motion to dismiss, thus trying to hide those true facts from this Court.

<u>Second</u>, the Amended Complaint makes a new allegation that tries -- but fails -- to fill the previous glaring <u>Pelham</u> gap described above.  In doing so, however, the Amended Complaint further exposes and confirms that Mayer Brown could not possibly have owed any duty to Plaintiffs or JPMorgan as their agent.

In particular, Paragraph 33 of the Amended Complaint purports to allege that GM's primary purpose and intent in engaging Mayer Brown in connection with the <u>Synthetic Lease</u> payoff was to influence "JPMorgan to execute and/or approve the <u>Synthetic Lease</u> Closing Documents prepared by Mayer Brown."  (Emphasis added.)  This allegation is impermissibly conclusory, completely implausible and insufficient to create a duty -- and we explain why in Section 4 below.  However, the point here is that -- even if this allegation were proper, plausible and true (it is none of these) -- it says nothing whatsoever about the <u>Term Loan</u>, the <u>Term Loan</u> Lenders, Plaintiffs or JPMorgan as the <u>Term Loan</u> Lenders' agent.  And here's why.

At the time GM asked Mayer Brown to continue to represent it and document the <u>Synthetic Lease</u> payoff, GM obviously did not know that Mayer Brown would erroneously include any Term Loan security in its drafts of <u>Synthetic Lease</u> Closing Documents or that these documents would affect the Term Loan in any way.  Thus, the Amended Complaint's allegation

13

that GM retained Mayer Brown to influence "JPMorgan" means "JPMorgan as administrative agent for the Synthetic Lease Lenders." Indeed, as the Amended Complaint (at ¶ 46) makes clear, the Synthetic Lease and Term Loan were two separate transactions "completely unrelated to each other." The lenders were different, and, although JPMorgan acted as agent in both transactions, it was acting separately and on behalf of different principals in each transaction. And, again, the Amended Complaint does not allege that Mayer Brown was aware that the Term Loan -- or Plaintiffs -- even existed. So, Paragraph 33 does not allege that GM's primary purpose and intent was to influence: (a) the Term Loan Lenders, Plaintiffs or JPMorgan as agent for the Term Loan Lenders; or (b) anything having to do with the Term Loan. To the contrary, Paragraph 33's allegation precludes any such allegation. After all, it says GM's purpose was to influence the Synthetic Lease payoff and JPMorgan's conduct as administrative agent for the Synthetic Lease Lenders.

Nor could Plaintiffs amend the complaint to allege that JPMorgan's status as agent for the Synthetic Lease is the same as its status as agent for the Term Loan Lenders. That is not only because any such allegation would be untrue, but also because -- in the pending Bankruptcy Adversary Proceedings -- Plaintiffs have alleged just the opposite: i.e., that JPMorgan in its capacity as administrative agent for the Synthetic Lease Lenders is a different entity from JPMorgan in its capacity as administrative agent for the Term Loan Lenders. Montgomery's Fifth Affirmative Defense states:

> The Termination Statement is void and ineffective because JPMorgan, in its capacity as Administrative Agent for a syndicate of financial institutions on a different financing for General Motors (the "Synthetic Lease"), was not the secured party of record under the Term Loan UCC Financial Statements and therefore had no power or authority to cause the Termination Statement to be filed.

14

(Bankruptcy Adversary Proceedings, Dkt. No. 292, at 61.) Oakland's Fifth Affirmative Defense is similar. (Id., Dkt. No. 295, at 60-61.)

The Court may take judicial notice of the Bankruptcy Adversary Proceedings on a motion to dismiss. See Virnich v. Vorwald, 664 F.3d 206, 209 (7th Cir. 2011), as amended (Jan. 3, 2012) (court may take judicial notice of pleadings in other case).

*    *    *

In sum, the Amended Complaint's allegation regarding GM's alleged intent to influence JPMorgan as administrative agent for the Synthetic Lease Lenders is irrelevant. There are no allegations that GM intended to influence JPMorgan as administrative agent for the Term Loan Lenders (including Plaintiffs). For this reason alone, the Amended Complaint should be dismissed.

### 4. In Any Event, The Amended Complaint Does Not Adequately Allege GM's Intent To Influence JPMorgan As Agent For The Synthetic Lease Lenders

Section 3 immediately above showed that Paragraph 33's allegation about GM's intent to influence JPMorgan as agent for the Synthetic Lease Lender says nothing about GM's intent to influence: (a) the Term Loan Lenders; (b) Plaintiffs; or (c) JPMorgan as their administrative agent. In doing so, we assumed that Paragraph 33's allegation is not conclusory, and is plausible and true. In reality, as will now be shown, that allegation fails to sufficiently allege that GM's primary purpose and intent in retaining Mayer Brown was to influence JPMorgan -- even as agent for the Synthetic Lease Lenders -- and fails to adequately plead that Mayer Brown had a duty to JPMorgan as agent for the Synthetic Lease Lenders.

For starters, Plaintiffs' allegation about GM's intent is conclusory. It is simply their regurgitation of the legal requirement for a lawyer's duty to a non-client as set forth in Pelham and its progeny. No supporting facts are pleaded, such as why GM's obvious need for protecting

15

itself throughout the entire Synthetic Lease transaction -- including making sure that it got a proper and full release of its payment obligations thereunder, that it obtained full and proper releases of all security therefor and that it ended up with clean fee simple title to the properties in question -- was <u>not</u> its primary purpose.

Similarly, given the facts alleged in the Amended Complaint -- as well as common sense -- it is completely <u>implausible</u> that GM's <u>primary</u> purpose and intent in hiring Mayer Brown for the payoff of the Synthetic Lease was to influence JPMorgan to execute the closing documents prepared by Mayer Brown. After all, that transaction was sophisticated and complicated, involving multiple properties and substantial funds. (Am. Compl. ¶ 20.) Thus, GM needed legal representation in that transaction for a host of reasons. Primary among them was surely the need to protect <u>GM's own</u> interests. For example, GM needed to make sure that none of the terms of the payoff was harmful to it, that the various documents executed in connection therewith were legally binding and effective, that all of the required paperwork to unwind the Synthetic Lease was completed, that GM's obligations as borrower thereunder were properly terminated, that it obtained a release of all applicable security for the Synthetic Lease and that it got full and clean title to the previously leased properties. These multiple purposes for which GM hired Mayer Brown to represent and protect <u>GM's</u> own interests make implausible any conclusory allegation that GM hired Mayer Brown for the <u>primary</u> purpose of benefitting or influencing <u>JPMorgan</u>.

Indeed, the Amended Complaint perverts <u>Pelham</u>'s use of the word "influence." If Plaintiffs were right, then in every transaction, each lawyer would owe the other party a duty. That is because, in <u>every</u> transaction, each side hopes the other side will agree to use its counsel's version of the necessary documents. Yet, that cannot possibly create a duty by one side's lawyer to the other side.

In any event, any duty by Mayer Brown in the Synthetic Lease payoff to JPMorgan as agent for the Synthetic Lease Lenders is defeated as a matter of law because, as the Amended Complaint admits, Mayer Brown was counsel to GM and JPMorgan was represented by Simpson Thacher.

Cases applying <u>Pelham</u> consistently hold that attorneys do not owe duties to the "other side" in a transaction, especially when the other side is represented by counsel. Thus, in a case very similar to this one, the Illinois appellate court refused to find that a <u>borrower's</u> <u>attorney</u> owed a duty to the <u>client's</u> <u>lender</u>. <u>First Nat'l Bank</u>, 548 N.E.2d at 1363-64. In that case, potential borrowers retained a lawyer to help them obtain a loan. <u>Id.</u> at 1362. The plaintiff bank agreed to lend the money only if the Small Business Administration ("SBA") guaranteed the loan. <u>Id.</u> In turn, the SBA agreed to guarantee the loan only if it was secured by a second mortgage on the borrowers' home. <u>Id.</u> Accordingly, the plaintiff bank forwarded second mortgage documents to the borrowers' lawyer. <u>Id.</u> However, even though the borrowers' house was held in a <u>land trust</u>, the borrowers' lawyer mistakenly had his clients sign the documents <u>individually</u>. <u>Id.</u> Subsequently, the borrowers gave a third mortgage on the property, and when the borrowers later filed for bankruptcy, the plaintiff-bank's second mortgage was declared invalid because the <u>land trustee</u> had not signed that mortgage. <u>Id.</u> The bank then sued the borrowers' lawyer for negligently preparing the second mortgage documents. <u>Id.</u>

The trial court granted the motion to dismiss filed by the borrowers' lawyer, and the appellate court affirmed. <u>Id.</u> at 1362, 1364. Relying on <u>Pelham</u>, the appellate court rejected the notion that the borrowers' primary purpose in hiring their own lawyer was to benefit or influence the bank. In language on all fours here, the appellate court stated:

> [The lender] contends that [the borrowers' lawyer's] representation
> of [the borrowers] was of a non-adversarial nature and that [the

> lawyer's] preparation of the mortgage securing the loan was intended to benefit both the [borrowers] and the [lender]. . . . We cannot agree. [The lender] ignores the "primary purpose and intent" language of <u>Pelham</u>. In the instant case the [borrowers], experienced business people, went out and hired an attorney for the sole purpose of assisting them in the procurement and execution of a loan necessary to keep their business afloat. The primary and direct purpose of the relationship was for [the lawyer] to help the [borrowers] find a loan and for him to oversee the execution of the loan documents. Obviously another party was going to benefit <u>somewhat</u> by making a loan to the [borrowers], <u>i.e.</u> by receiving interest from the loan, but it cannot be said that this was the primary and direct reason for the [lawyer-client] relationship.

<u>Id.</u> at 1363 (emphasis in original). Notably, the court also found it significant that "[n]othing prevented the [lender] from having [the borrowers' lawyer] return the completed documents to the [lender] for [its] own counsel to review." <u>Id.</u> at 1364. This point mirrored <u>Pelham</u>, in which the court's analysis was influenced by the fact that somebody else besides the wife's lawyer could have protected the interests of the children. In particular, the <u>Pelham</u> court stated that "the rights of the minor children of the parties in this case could have been protected without compromising the undivided loyalty of either spouse's attorney." 440 N.E.2d at 101.

As in <u>First National Bank</u>, GM, an "experienced business . . . went out and hired an attorney for the sole purpose of assisting [it] in the . . . execution of a loan [payoff]." 548 N.E.2d at 1363. The "primary and direct purpose of the relationship was for [Mayer Brown] to help [GM] . . . and for [Mayer Brown] to oversee the execution of the loan [payoff] documents." <u>Id.</u> Indeed, the facts in this case are stronger for Mayer Brown than they were for the borrowers' lawyer in <u>First National Bank</u>. That is because the things that "could have" happened there <u>actually</u> happened here. In particular: (a) JPMorgan <u>did</u> hire its own counsel who, in fact, <u>did</u> review and approve the Three Documents for it; and (b) JPMorgan itself also approved the Three Documents. In short, <u>First National Bank</u> compels dismissal of the Amended Complaint.

Orr v. Shepard, 524 N.E.2d 1105 (Ill. App. Ct. 1988), also is strikingly similar to the instant case. In Orr, the sellers of commercial real estate sued the buyer's lawyer because his negligent preparation of an escrow agreement allegedly caused damage to the sellers. Id. at 1106-07. However, the trial court held that the buyers' lawyers' preparation of an escrow agreement did not create a duty to the sellers and dismissed the claim. Id. The appellate court affirmed, using language that is precisely applicable here:

> [The lawyer] was the law firm of [the buyers]. The primary purpose of [the lawyer's] work was to protect the interest of [the buyers].

Id. at 1108.

Gold v. Vasileff, 513 N.E.2d 446 (Ill. App. Ct. 1987), also is instructive. In Gold, the buyers of a grocery store sued the sellers' lawyer after the sellers failed to perform under the sales contract. Id. at 447. The sellers' lawyer allegedly "promised and represented" that the sellers would comply with the sales contract, despite the fact that he knew or should have known that they would not. Id. The appellate court rejected the buyers' argument in short order:

> A lawyer must represent his client with zeal and undivided loyalty in adversarial matters, such as negotiations and drafting of documents concerning the sale of a business. Defendant [i.e., the sellers' lawyer] owed no fiduciary duties to the buyers, and if the buyers reposed trust and confidence in defendant, it was unreasonably placed . . . .

Id. at 448 (affirming dismissal of the case).

Here, as already noted, Paragraph 33 of the Amended Complaint alleges that "General Motors' primary purpose and intent in engaging Mayer Brown to prepare the Synthetic Lease Closing Documents was to effect the Synthetic Lease payoff by influencing JPMorgan to execute and/or approve the Synthetic Lease Closing Documents prepared by Mayer Brown." This allegation cannot possibly satisfy Pelham; if it does, lawyers who draft closing documents will

always be subject to liability to the other side in the transaction. That is because, in every transaction, all parties need to sign the documents necessary to close the transaction. Indeed, that is the ultimate step in most transactions. Surely, it cannot satisfy Pelham to merely allege the always-true fact that a lawyer's client intended to complete the transaction at issue and hoped that the other side would agree to its counsel's version of the documents necessary to do so.

As a further example of the Amended Complaint's inadequacy to satisfy Pelham, Paragraph 34 of the Amended Complaint alleges that GM and JPMorgan were not adversaries vis-a-vis the Synthetic Lease payoff because "[b]oth JPMorgan and General Motors had a common interest in the proper, timely and orderly payoff of the Synthetic Lease in accordance with the unambiguous terms of the Participation Agreement." Once again, this could be said about virtually every transaction. In particular, in every loan or purchase and sale transaction, the parties (borrower/lender and purchaser/seller) have common interests in the orderly closing of the deal. Thus, again, allowing Paragraph 34 to satisfy Pelham would make virtually all transactional lawyers liable to the other side. Yet, that is not the law and it would be inconsistent with a lawyer's professional obligations.

Paragraph 39 of the Amended Complaint alleges that there were no substantive "discussions," "disputes," etc. between Mayer Brown and JPMorgan. In the first place, the Second Circuit found that Mayer Brown provided drafts to both JPMorgan and Simpson Thacher and both of them approved the drafts. Such approval is the same as a substantive discussion. More importantly, it is irrelevant that there were allegedly no disputes because all that the absence of disputes would demonstrate is that JPMorgan and Simpson Thacher approved Mayer Brown's drafts. The lack of disputes does not demonstrate that GM and JPMorgan did not have separate interests in the draft documents. Self-evidently, GM's interests were in ensuring, for

example, that there was no chance JPMorgan could demand that GM pay <u>further</u> sums to it. JPMorgan's interests were different. It needed to ensure that it received <u>full</u> payment of the loan without underpayment -- GM would not have cared if it <u>underpaid</u> the loan as long as JPMorgan could not seek further funds from it.[5]

The Amended Complaint also contains a variety of allegations (<u>e.g.</u>, ¶ 61) that Mayer Brown was the "responsible party" for the Three Documents. Such allegations say nothing about <u>GM's</u> purported intent to benefit JPMorgan and are irrelevant to the <u>Pelham</u> analysis. Indeed, the undisputed fact that Mayer Brown was responsible for doing drafts of the Three Documents -- which drafts Plaintiffs previously alleged, and the Second Circuit found, were reviewed by JPMorgan's counsel -- says nothing about GM's intentions.

The Amended Complaint (at ¶ 80) also alleges that Mayer Brown knew or should have known that JPMorgan was relying on it. But, that says nothing about <u>GM's</u> intent and, as a matter of law, does not suffice to create a duty. A third party's reliance on a lawyer -- even if known by the lawyer -- does not create a duty. Indeed, in <u>Felty v. Hartweg</u>, 523 N.E.2d 555, 557 (Ill. App. Ct. 1988) (affirming dismissal of case), the court directly rejected that contention:

> The allegation that [the lawyer] should have known he was expected [by the minority shareholder] to protect the minority shareholder is an allegation which places upon him a duty not

---

[5]     Plaintiffs are collaterally estopped from denying the Second Circuit's findings that both JPMorgan and Simpson Thacher reviewed and approved the Three Documents. Collateral estoppel bars a party, and those (like Plaintiffs) whose interests were adequately represented by a party, from relitigating in a second proceeding an issue of fact or law litigated and actually decided in a prior proceeding if there was a full and fair opportunity to litigate the issue and the decision on the issue was necessary to support a decision that was not "avowedly tentative" and was subject to appellate review. See <u>M.O.C.H.A. Soc'y, Inc. v. City of Buffalo</u>, 689 F. 3d 263, 284-86 (2d Cir. 2012) (discussing effect of collateral estoppel on privies); <u>Metromedia Co. v. Fugazy</u>, 983 F.2d 350, 366-67 (2d Cir. 1992) (discussing elements of collateral estoppel and Second Circuit's "practical" test for finality); <u>see also</u> <u>In re Complaint of Am. River Transp. Co.</u>, 712 F. Supp. 2d 735, 737 (N.D. Ill. 2010) (Illinois determines collateral estoppel effect of judgment by law of jurisdiction where judgment was entered).

> imposed by law. Even if, as alleged, he knew of those expectations, that would not necessarily have imposed a duty which he would owe to a client.

Mayer Brown was retained by and represented only the borrower, GM. Mayer Brown's duty was to protect the borrower, including by getting all security relating to the Synthetic Lease released and making sure GM's interests were fully protected. On the other hand, the lenders' agent, JPMorgan, had different interests -- including ensuring that it was fully paid on the Synthetic Lease and that only security related thereto was released. JPMorgan hired Simpson Thacher to preserve these and other interests. Thus, Mayer Brown owed no duty to JPMorgan as agent for the Synthetic Loan Lenders.

*     *     *

For the reasons set forth in Sections A.3 or A.4, the Amended Complaint should be dismissed for lack of duty. And such dismissal should be with prejudice.

### B.     No Reliance

The Amended Complaint fails for another reason: lack of reliance.

### 1.     Reliance Is Required For Both Negligent Misrepresentation And Legal Malpractice

Plaintiffs' negligent misrepresentation claim (Count I) requires Plaintiffs to plead, inter alia, reliance on the alleged misrepresentation. E.g., JPMorgan Chase Bank, N.A. v. E.-W. Logistics, LLC, 9 N.E.3d 104, 121 (Ill. App. Ct. 2014); Avon Hardware Co. v. Ace Hardware Corp., 998 N.E.2d 1281, 1287-88 (Ill. App. Ct. 2013).[6]

---

[6]     East-West Logistics involved a fraud claim. However, under Illinois law, the reasonable reliance elements of fraud and negligent misrepresentation are the same. Avon Hardware Co., 998 N.E.2d at 1287-88; Quinn v. McGraw-Hill Cos., 168 F.3d 331, 335-36 (7th Cir. 1999).

Reliance also is a necessary element of Plaintiffs' legal malpractice claim (Count II). Although reliance is not generally listed as an <u>express</u> element of a legal malpractice claim, Illinois law makes it a <u>subsumed</u> or <u>implicit</u> element. That is because <u>causation</u> is an <u>express</u> element of legal malpractice, and negligent legal advice does not <u>cause</u> a plaintiff's injury if the plaintiff does not <u>rely</u> on that advice. <u>Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.</u>, 980 N.E.2d 215, 235 (Ill. App. Ct. 2012) (no proximate cause where plaintiffs in legal malpractice action failed to prove they relied on negligent advice). Thus, because reliance is necessary for causation and causation is necessary for legal malpractice, reliance is necessary for legal malpractice.

The Illinois Supreme Court has come to the same conclusion, albeit in the context of consumer fraud. In particular, although reliance is not an <u>express</u> element of consumer fraud, the Illinois Supreme Court holds that it is an <u>implicit</u> element thereof subsumed by the <u>causation</u> requirement. <u>Oliveira v. Amoco Oil Co.</u>, 776 N.E.2d 151, 161 (Ill. 2002) (affirming dismissal of Illinois Consumer Fraud Act claim where plaintiff did not plead reliance). As the Illinois Supreme Court explained:

> in the common law tort of fraudulent misrepresentation, the causal link between the wrongdoer and the damage to the plaintiff is provided by the concept of reliance. More precisely, in the common law tort of fraudulent misrepresentation, the element of cause-in-fact is <u>defined</u> as reliance.

<u>Id.</u> (emphasis in original); <u>accord</u> <u>Amerigas Propane, L.P. v. BP Am., Inc.</u>, 691 F. Supp. 2d 844, 851-52 (N.D. Ill. 2010) (granting motion to dismiss Illinois Consumer Fraud Act claim because, without reliance on the alleged fraudulent misstatement, "there can be no proximate cause").[7]

---

[7] Although this argument is also an additional causation argument, we discuss it in detail in this Section II (no reliance) rather than Section III (no causation) for ease of analysis.

2.	**The Amended Complaint Does Not Allege That Either Plaintiffs Or JPMorgan As Administrative Agent For The Term Loan Lenders Actually Relied On Mayer Brown**

The Amended Complaint does not allege that <u>Plaintiffs</u> relied on any statements by Mayer Brown.  Nor does it allege that JPMorgan as administrative agent for the <u>Term Loan</u> Lenders relied Mayer Brown.  For these two reasons alone, the Amended Complaint should be dismissed.

3.	**The Amended Complaint Does Not Adequately Allege That JPMorgan As Administrative Agent For The Synthetic Lease Lenders Actually Relied On Mayer Brown**

Even if the Amended Complaint could stand based on alleged reliance on Mayer Brown by JPMorgan as administrative agent for the <u>Synthetic Lease Lenders</u>, it would still fail.  That is because the Amended Complaint alleges <u>no</u> <u>plausible</u> <u>facts</u> supporting its <u>conclusory</u> allegations that JPMorgan as administrative agent for the Synthetic Lease Lenders <u>actually</u> <u>relied</u> on Mayer Brown.  <u>Ashcroft</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice.").

The Amended Complaint (at ¶ 84) purports to allege that JPMorgan as administrative agent for the Synthetic Lease Lenders actually relied on Mayer Brown:

> In light of the lack of any adversity between General Motors and JPMorgan in connection with the Synthetic Lease Payoff, the common interests of General Motors and JPMorgan in connection with the Synthetic Lease Payoff, and the reputation of Mayer Brown and its longstanding representation of JPMorgan on numerous matters, JPMorgan relied upon Mayer Brown's representations regarding the Synthetic Lease Closing Checklist, the Synthetic Lease Closing Documents, and the Escrow Instructions.

As discussed above with respect to Paragraphs 33, 34 and 39 of the Amended Complaint, the alleged lack of adversity and the common interests of GM and JPMorgan are entirely illusory.  Thus, those portions of Paragraph 84 should be disregarded.  Similarly, Mayer Brown's

reputation and its prior representation of JPMorgan on <u>unrelated</u> matters do not make it plausible that JPMorgan actually relied on Mayer Brown in this adversarial setting in which Mayer Brown was representing JPMorgan's borrower, GM.  It defies all logic to suggest that JPMorgan (a highly sophisticated lender and one of the largest companies in the world) represented by Simpson Thacher (a highly sophisticated law firm) relied on its adversary's counsel in deciding what security to release.

What is missing from the Amended Complaint are <u>any</u> <u>facts</u> that make plausible the Amended Complaint's "threadbare recitals" of the reliance element.  <u>See</u> <u>Ashcroft</u>, 556 U.S. at 664.  Crucially, there is no allegation that, in reliance on Mayer Brown's initial drafting of the Three Documents, JPMorgan declined to review the drafts of the Three Documents.  Nor is there any allegation that JPMorgan declined the opportunity to retain independent counsel to review them or instructed its counsel to forego reviewing the drafts.  Notably, Mayer Brown pointed out this deficiency in its motion to dismiss the original complaints (Dkt. No. 21 at 17) and, despite adding a host of conclusions, the Amended Complaint does not make such an allegation.  Nor could Plaintiffs do so.  After all, they alleged just the opposite in the original complaints.  Moreover, the Amended Complaint affirmatively alleges that JP Morgan <u>did</u> retain independent counsel, and the Second Circuit held that Simpson Thacher <u>did</u> undertake a review of the drafts and that both JPMorgan and its counsel <u>did</u> approve them.

### 4. No Reasonable Reliance

Even if JPMorgan (in any capacity) did rely on Mayer Brown, any such reliance, as a matter of law, was unreasonable.  Although the question of whether a plaintiff's reliance is reasonable is usually a question of fact, "where it is apparent from the undisputed facts . . . that only one conclusion can be drawn, the question becomes one for the court."  <u>Neptuno v. Arbor</u>, 692 N.E.2d 812, 819 (Ill. App. Ct. 1998) (affirming grant of motion to dismiss negligent

misrepresentation claim where reliance was not justified as a matter of law). JPMorgan could not, as a matter of law, have reasonably relied on Mayer Brown.

### a. JPMorgan Was Obligated To Protect Itself

In the specific context of reviewing the UCC termination statement at issue here, the Delaware Supreme Court made it clear that JP Morgan was obligated to protect itself and could not rely on <u>anybody</u> else to review the release documents:

> Before a secured party authorizes the filing of a termination statement, it ought to review the statement carefully and understand what security interests it is releasing and why. A secured party is the master of its own termination statement; it works no unfairness to expect the secured party to review a termination statement carefully and only file the statement once it is sure the statement is correct.

103 A.3d 1010, 1016. Thus, because JPMorgan was obligated to "review the statement carefully" and understand what it was releasing and why, JPMorgan could not, as a matter of law, reasonably rely on Mayer Brown.

### b. No Reasonable Reliance On Statements Made By Opposing Counsel

More broadly, as a matter of law (except in the limited circumstance of opinion letters directed to the other side of the transaction, <u>see</u> <u>supra</u>), it is unreasonable for a party with its own counsel in a transaction to rely on representations made by the attorney for the other side of the transaction. <u>Merrilees v. Merrilees</u>, 998 N.E.2d 147, 158-59 (Ill. App. Ct. 2013); <u>see also</u> <u>Gold</u>, 513 N.E.2d at 448-49 (unreasonable to rely on counsel for other side of transaction); <u>Lyons v. SBCI Swiss Bank Corp. Inv. Banking, Inc.</u>, No. 94 C 5448, 1995 WL 151810, at *3-4 (N.D. Ill. Mar. 31, 1995) (no reasonable reliance on representations made by another party in negotiations).

Merrilees is dispositive.  There, the plaintiff and her husband negotiated a settlement of their divorce case.  Id. at 153-54.  Later, the plaintiff sued her husband's lawyer for making fraudulent statements that induced her to enter into the settlement contract.  Id. at 154.  The trial court dismissed the claim against the husband's lawyer -- with prejudice -- and the appellate court affirmed.  Id. at 154-55, 158-59, 164.  The appellate court held that the plaintiff could not plead reasonable reliance on representations made by the opposing side's attorneys during negotiations because the plaintiff had her own lawyer and a financial expert to advise her regarding the transaction at issue.  Id. at 158-59.[8]

JPMorgan as administrative agent for the Synthetic Lease Lenders is no different than the plaintiff in Merrilees.  Plaintiffs purport to plead that JPMorgan relied on representations made by the opposing side's attorneys (Mayer Brown) during negotiations of the Synthetic Lease payoff.  Yet, JPMorgan had its own attorneys (Simpson Thacher).  As a matter of law, JPMorgan could not reasonably rely on representations made by Mayer Brown -- the other side's attorneys -- during negotiations.  Id.

Gold also is on point.  As discussed above, in Gold, after the sale of a business, the buyers brought a negligent misrepresentation claim against the sellers' lawyer.  513 N.E.2d at 447-48.  The trial court granted the lawyer's motion to dismiss -- with prejudice -- and the appellate court affirmed.  Id.  The appellate court did not mention whether the buyer had its own counsel.  Nevertheless, it held that "if the buyers reposed trust and confidence [in the sellers' attorney], it was unreasonably placed."  Id. at 448 (emphasis added).

---

[8] As noted in footnote 7, supra, under Illinois law, the reasonable reliance elements of fraud and negligent misrepresentation are the same.

### c. No Reasonable Reliance Where
### JPMorgan Could Have Discovered The Truth

"As a matter of <u>law</u>, if an ample <u>opportunity</u> to discover the truth of the representations existed, then reliance on them was not justified." <u>O'Connor v. Asperger Caraher LLC</u>, No. 05 C 5264, 2006 WL 3210498, at *6 (N.D. Ill. Nov. 6, 2006) (Illinois law) (emphasis added) (citation, internal quotation marks and brackets omitted); <u>accord</u> <u>Neptuno</u>, 692 N.E.2d at 818-19. Moreover, a party with <u>access</u> to a written document "may not reasonably rely on representations of other contracting parties respecting the <u>effect</u> of" the document. <u>Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n</u>, 441 N.E.2d 864, 868 (Ill. App. Ct. 1982) (emphasis added); <u>see also</u> <u>Randazzo v. Harris Bank Palatine, N.A.</u>, 104 F. Supp. 2d 949, 952 (N.D. Ill. 2000) (Illinois law).

As the Illinois Supreme Court put it when addressing alleged misrepresentations about title to real estate:

> The rule is well established that a party is not justified in relying on representations made when he has <u>ample</u> <u>opportunity</u> to ascertain the truth of the representations before he acts. When he is afforded the <u>opportunity</u> of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him <u>he</u> <u>cannot</u> <u>be</u> <u>heard</u> <u>to</u> <u>say</u> <u>he</u> <u>was</u> <u>deceived</u> <u>by</u> <u>misrepresentations</u>.

<u>Schmidt v. Landfield</u>, 169 N.E.2d 229, 232 (Ill. 1960) (emphasis added). More recently, the Illinois appellate court put it this way:

> A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another.

<u>Siegel Dev., LLC v. Peak Constr. LLC</u>, 993 N.E.2d 1041, 1060 (Ill. App. Ct. 2013) (citations, internal quotation marks and brackets omitted).

<u>Central States Joint Board v. Continental Assurance Co.</u>, 453 N.E.2d 932 (Ill. App. Ct. 1983), is on point. That case considered whether one party justifiably relied on representations

that the other made during negotiations. There, the parties negotiated and entered into an amended insurance policy. Id. at 933-34. The plaintiff later sued to rescind the amendment, claiming fraudulent inducement during negotiations due to the defendant's failure to disclose that it had inserted a provision into the amendment. Id. at 934. Although the trial court found in favor of the plaintiff, the appellate court reversed. Id. at 933-35. The appellate court held that the plaintiff could not have reasonably relied on any representations (or lack thereof) from the defendant about the contract at issue because the plaintiff's attorney, the plaintiff's insurance consultant and another insurance company on plaintiff's behalf all reviewed the amendment before plaintiff signed it. Id. at 936-37. The court reasoned that, because the plaintiff had ample opportunity to discover the unwanted provision, it could not have reasonably relied on any alleged misrepresentations with respect thereto. Id. at 937.

The same is true here. JPMorgan as administrative agent for the Synthetic Lease Lenders and its counsel, Simpson Thacher, had ample opportunity to discover the Unrelated Termination Statement before it was filed. As a result, JPMorgan could not reasonably rely on any alleged misrepresentations made by Mayer Brown with respect thereto. Id.

Also instructive is Teamsters Local 282 Pension Trust Fund v. Angelos, 839 F.2d 366 (7th Cir. 1988), which concerned a lender's reliance on statements made by a borrower's lawyer during loan negotiations. Id. at 367-68. When the loan in question went unpaid, the lender sued the borrower and the law firm that represented the borrower in the loan transaction for fraud for failing to disclose the borrower's tenuous financial position at the time of the loan. Id. at 368. The Seventh Circuit affirmed summary judgment in favor of the borrower and its lawyers because the lender could not prove reasonable reliance. Id. at 371-72. The Seventh Circuit concluded that, during negotiations, the lender had the opportunity to discover the truth about the

borrower's financial condition from the financial statements the borrower provided. Id. Thus, the lender could not rely on representations from the borrower or its law firm that were contradicted by those financial statements. Id. In particular, the Seventh Circuit noted that Illinois' law of reasonable reliance imposes a "duty to make an independent investigation[, which duty] includes the negative obligation of not relying on the representations, predictions and hopes of a borrower." Id. at 372 (citation and internal quotation marks omitted).

Here -- as a matter of law -- JPMorgan as administrative agent for the Synthetic Lease Lenders could not justifiably rely on the alleged misrepresentations because the Amended Complaint alleges that JPMorgan and its counsel, Simpson Thacher, had at least the following ample opportunities to discover the truth of the alleged misrepresentations:

First, JPMorgan and its counsel had sufficient opportunities to review the Synthetic Lease payoff documents and discover the alleged misstatements. After all, drafts of the Three Documents were sent to a Simpson Thacher attorney. Indeed, several drafts of some of those documents were sent to Simpson Thacher, plus a follow-up email. The Simpson Thacher attorney reviewed the drafts of the Three Documents and responded that the Mayer Brown associate did a "[n]ice job on the documents" and the Escrow Instructions were "fine." In re Motors Liquidation Co., 777 F.3d at 105. The documents were, in turn, transmitted to JPMorgan, which approved them. Id. The reviews by both Simpson Thacher and JPMorgan constituted ample opportunities to discover the truth of the representations, making reliance on them unjustified. Indeed, according to the Amended Complaint (at ¶ 65), the mistake was so obvious that it was apparent to any reviewer from the face of the drafts of the Three Documents.

Second, because JPMorgan -- as a party to the Synthetic Lease payoff -- had access to the Three Documents, it could not rely on any statement by Mayer Brown about the effect thereof.

See, e.g., Jursich, 441 N.E.2d at 868 (a party with access to a written document "may not reasonably rely on representations of other contracting parties respecting the effect of" the document (emphasis added)).

Third, even if JPMorgan and Simpson Thacher had not reviewed the financing statements for the Term Loan, those statements were publicly filed documents. Thus, JPMorgan and Simpson Thacher easily could have discovered any errors in the Three Documents. See Warren Chevrolet, Inc. v. Bemis, 555 N.E.2d 101, 103-04 (Ill. App. Ct. 1990) (plaintiff's acceptance of dealership's representations as to the worth of stock without examining or even requesting the dealership's records -- which were also on file with the Iowa Secretary of State's office -- prevented a finding of fraud on the part of the dealership); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152-53 (6th Cir. 1987) (misleading statements regarding bank's prime rate cannot be fraud where such information is publicly available) (cited favorably in Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins. Co., 941 F.2d 561, 570-71 (7th Cir. 1991)).

JPMorgan had a "duty to make an independent investigation [which] includes the negative obligation of not relying on the representations, predictions and hopes of a borrower [i.e., GM]." Teamsters Local 282 Pension Tr. Fund, 839 F.2d at 372 (emphasis added). In the Illinois Supreme Court's words, if the party suing for a misrepresentation "does not avail himself of the means of knowledge open to him[,] he cannot be heard to say he was deceived by misrepresentations." Schmidt, 169 N.E.2d at 232.

### C.     No Causation

To sustain their negligent misrepresentation claim (Count I), Plaintiffs must also plead that Mayer Brown's alleged misrepresentations proximately caused their damages. Zahorik v. Smith Barney, Harris Upham & Co., 664 F. Supp. 309, 313 (N.D. Ill. 1987) (dismissing claim

under Illinois law).  Similarly, to sustain their legal malpractice claim (Count II), Plaintiffs must plead proximate cause establishing that "but for" the attorney's negligence, the plaintiff would not have suffered damages.  Ignarski v. Norbut, 648 N.E.2d 285, 288 (Ill. App. Ct. 1995) (summary judgment based on failure to plead causation); see also Webb v. Damisch, 842 N.E.2d 140, 147-48 (Ill. App. Ct. 2005) (granting motion to dismiss malpractice claim due to failure to plead proximate cause); Purmal v. Robert N. Wadington & Assocs., 820 N.E.2d 86, 93 (Ill. App. Ct. 2004) (same).

As will now be shown, the Amended Complaint here fails because, as a matter of law, Mayer Brown did not cause Plaintiffs' losses.

### 1. No Causation Because No Reliance

As demonstrated in Section B.1, supra, reliance is necessary for causation.  Thus, because the Amended Complaint fails with respect to reliance, it fails with respect to causation as well.

### 2. No Proximate Cause Because Plaintiffs' Damages Were Not Foreseeable

The Amended Complaint fails to satisfy the element of causation because, as a matter of law, Plaintiffs' alleged injuries were not foreseeable.  "[P]roximate cause may be determined as a matter of law where (i) the facts are undisputed, and (ii) there can be no difference in the judgment of reasonable persons as to the inferences that may be drawn from the facts."  Huang v. Brenson, 7 N.E.3d 729, 738 (Ill. App. Ct. 2014) (affirming grant of motion to dismiss as a matter of law where plaintiff failed to plead proximate cause in a legal malpractice action).  Proximate cause "requires a showing of legal cause, that is to say, foreseeability."  Id. at 735.  "The defendant's actions are the legal cause of the plaintiff's injury where a reasonable person in the defendant's position could foresee the plaintiff's injury as a likely result of the defendant's conduct."  Id.  Ultimately, "[t]he question is one of policy -- How far should a defendant's legal

responsibility extend for conduct that did, in fact, cause the harm?" <u>City of Chi. v. Beretta</u> <u>U.S.A. Corp.</u>, 821 N.E.2d 1099, 1127-28, 1138 (Ill. 2004) (reversing appellate court's ruling as a matter of law and affirming trial court's grant of motion to dismiss where plaintiff failed to plead proximate cause).

Here, Mayer Brown never could have foreseen that its alleged conduct with respect to the <u>Synthetic Lease</u> transaction would cause Plaintiffs' alleged injury with respect to the entirely unrelated <u>Term Loan</u>. Mayer Brown is not alleged to have worked on, been told about or otherwise known of the Term Loan at any point during its work on the Synthetic Lease payoff. How could Mayer Brown have foreseen injury to parties (<u>i.e.</u>, Plaintiffs) that it is not alleged to have even known existed concerning a transaction (<u>i.e.</u>, the Term Loan) that it is not alleged to have known about? Indeed, to hold that Plaintiffs' alleged injury is -- or even could be -- foreseeable is to hold that attorneys should be held legally responsible if their purportedly negligent conduct causes damage to their client's adversary's principals in an entirely separate and unknown transaction. This is not -- and cannot be -- the law. <u>Id.</u> at 1127-28, 1138; <u>Huang</u>, 7 N.E.3d at 735, 738. Because the Amended Complaint fails to allege that Plaintiffs' alleged injury was <u>foreseeable</u> as <u>a</u> <u>likely</u> <u>result</u> of Mayer Brown's allegedly negligent conduct, the Amended Complaint fails for lack of causation.

### 3. <u>No Causation Because Of An Intervening Cause</u>

The Amended Complaint also fails for lack of causation because its allegations establish the presence of an intervening cause.

### a. <u>The Relevant Law Of Intervening Causation</u>

As a matter of law, a lawyer's negligence does not proximately cause harm where the lawyer's negligence could be corrected by other counsel, or otherwise. <u>See</u> <u>Blythe Holdings,</u> <u>Inc. v. DeAngelis</u>, 750 F.3d 653, 656-57 (7th Cir. 2014); <u>Mitchell v. Schain, Fursel & Burney,</u>

Ltd., 773 N.E.2d 1192, 1195 (Ill. App. Ct. 2002). In other words, a lawyer's negligence does not proximately cause damages where another lawyer -- or the client itself -- has the opportunity to correct the negligence. In such cases, the other attorney's or client's failure to cure the error is an intervening cause that itself proximately causes the client's harm and absolves the original lawyer from liability.

Thus, for example, in Blythe Holdings, the Seventh Circuit, applying Illinois law -- including Mitchell -- affirmed dismissal of a malpractice case. There, the client hired a lawyer to help it purchase property from the City of Chicago. 750 F.3d at 655. However, the purchase application that the lawyer filed contained errors, which caused the application to be denied as incomplete. Id. Nevertheless, the client could have cured the errors and completed the application, but it did not. Id. at 655-56. Instead, the client sued the lawyer for negligence. Id. at 656. The Seventh Circuit held that the lawyer did not proximately cause the client's failure to obtain the property. Id. at 657. It reasoned that "[s]ince [the client's] ability to acquire the vacant lots remained legally viable well after any alleged malpractice by [the lawyer], it was [the client's] failure to move forward with the application process, not malpractice on the part of [the lawyer], that doomed [the client's] real estate deal." Id.

### b. Here, The Amended Complaint's Allegations Demonstrate An Intervening Cause For Plaintiffs' Alleged Damages

When Mayer Brown prepared and transmitted drafts of the Three Documents to Simpson Thacher, the Unrelated Termination Statement had not yet been filed and the Term Loan Security Interest had not yet been released. Indeed, the Amended Complaint's allegations show that the Term Loan Security Interest was not actually released until two weeks after Mayer Brown prepared and transmitted the initial drafts. The Second Circuit found that, during those two weeks, both Simpson Thacher and JPMorgan reviewed and approved the Three Documents.

As a result, because (1) JPMorgan was Plaintiffs' agent and Simpson Thacher was JPMorgan's lawyer; and (2) Mayer Brown's alleged negligence preceded Simpson Thacher and JPMorgan's review and approval of the drafts of the Three Documents, the mistake could and should have been corrected by either or both JPMorgan or Simpson Thacher.

Under Illinois law, Simpson Thacher and JPMorgan's ability to correct the Three Documents before the Term Loan Security Interest was actually released means that Mayer Brown did not proximately cause Plaintiffs' alleged loss. According to the Amended Complaint's allegations, Simpson Thacher and JPMorgan approved drafts of the Three Documents containing the alleged errors that terminated the Term Loan Security Interest at a time when correcting those errors would have prevented the damages. Thus, Mayer Brown did not proximately cause the loss of that security. Blythe Holdings, 750 F.3d at 757; see also Mitchell, 773 N.E.2d at 1195; Webb, 842 N.E.2d at 147-48; Purmal, 820 N.E.2d at 93; Zahorik, 664 F. Supp. at 313; Ignarski, 648 N.E.2d at 288.

### D.    The Amended Complaint Should Be Dismissed As To The City

#### 1.    No Standing

In order to have standing to sue, the City must establish that it has "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). Far from meeting this standard, the City alleges merely that it is required to "ensure" that Oakland is "fully funded" and that "if [Oakland] loses funds as a result of Mayer Brown's negligence . . . and cannot pay benefits due to its members, [the City] must pay any such shortfall."  (Am. Compl. ¶ 7 (emphasis added).)

As the City's own allegation makes clear, its damages are entirely conjectural and hypothetical and depend upon:  (a) Oakland losing money as a result of Mayer Brown's alleged

negligence (which the City's own allegation acknowledges is not certain); and (b) Oakland being unable to pay its members (something that also is not alleged to have happened). The Amended Complaint alleges absolutely no facts about the likelihood -- let alone the imminence -- of Oakland being unable to pay its members. Thus, the City lacks standing to proceed, and its claim should be dismissed pursuant to Rule 12(b)(1).

**2.      Even If The City Had Standing, Mayer Brown's Other
Arguments For Dismissal Apply With Even More Force To It**

Even if the City had standing (it does not), the arguments described above with respect to the other Plaintiffs apply with even more force to the City. By way of example only, it has already been shown that the Amended Complaint does not allege that GM hired Mayer Brown to benefit or influence <u>Plaintiffs</u> (who had no relationship to the Synthetic Lease). It is even less plausible to suggest that GM hired Mayer Brown intending to benefit or influence the <u>City</u>. Similarly, it was certainly not forseeable to Mayer Brown that the City -- an alleged "ensurer" for a lender that was in a transaction of which Mayer Brown was not even aware -- would be injured by Mayer Brown's purported negligence.

<u>**CONCLUSION**</u>

For any and all of the reasons stated herein, the Amended Complaint should be dismissed with prejudice, and Mayer Brown should be granted such other and further relief as is appropriate.

Respectfully submitted,

MAYER BROWN LLP,

By:____/s/ Stephen Novack_____
One of Its Attorneys

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that he served a copy of the foregoing ***Defendant's Memorandum In Support Of Its Motion To Dismiss The Amended Complaint*** upon all counsel of record by causing a true and correct copy thereof to be delivered by electronically filing the document with the Clerk of Court using the ECF system on the 29th day of January, 2016.

                                                        /s/ Stephen Novack